MOUNT STERLING (VILLAGE), PLAINTIFF, *v.* TRACY, ETC., ET, DEFENDANTS.

Common Pleas Court, Madison County.

No. 22063. Decided August 28, 1963.

*Mr. Robert E. Wright,* village solicitor.

*Mr. William Saxbe,* attorney general, by *Mr. Robert E. Boyd,* assistant attorney general.

*Mr. James B. Patterson, Jr.,* prosecuting attorney.

BAYNES, J. This is a case brought under Sections 133.71 to 133.80, Revised Code, which became effective September 21, 1961. This Act, 129 Ohio Laws, 247, authorizes a judicial procedure for validating public indebtedness and proceedings taken in connection therewith. We fail to find any reported Ohio cases since the Act became effective. The case is one of first impression.

The Auditor of the state of Ohio, the Auditor of Madison County and the Clerk-Treasurer of the petitioning Village are named as defendants. There was also a publication notice to "all property owners, taxpayers, citizens and others claiming any right, title or interest in any property or funds to be affected . . . ((by the prayer of the petition))." The petition was filed on June 18, 1963, and was assigned for hearing on August 22, 1963.

The Answer of the Attorney General of the State on behalf of the Auditor alleges that the plaintiff Village had failed to

certify a copy of Council's Resolution to the County Auditor within the time specified by Section 133.09, Revised Code. Also that this resolution did not specify the approximate maturity date of the bonds proposed to be issued. The prayer of this Answer is for the Court to determine if the Village "substantially complied with the statutory requirements."

The Answer of the Madison County Auditor alleges that the Resolution was certified to him 106 days prior to the election rather than 110 days as prescribed by statute. (Sec. 133.09, Revised Code.)

Although the Act provides that any interested person may intervene and become a named party, no one did so in this case.

The facts as shown by the pleadings and the evidence are that the Village Council determined that $25,000 bonds should be issued to buy fire apparatus and equipment and that the matter be submitted to the voters on November 6, 1962. The Resolution was unanimously passed at a regular Council meeting on July 23, 1962, which was 106 days prior to the election. The statute (Section 133.09, Revised Code), requires the Resolution be certified to the County Auditor for his determination of the "average annual levy" required to pay the interest and retire said bonds "at least" 110 days before the election.

The certification was made on July 24, 1962, and on the same date the Auditor made his certification, that it would require an average of 1.1 mills, i. e., eleven cents on each $100 of assessed valuation. This the statute requires to be done 100 days prior to the election. It was actually done 105 days prior to the election.

The Council at a special meeting as to which written notice was sent each member, one member being absent, passed a resolution on July 30, 1963, to submit the question to the voters. This was filed with the Board of Elections on August 6, 1962, 92 days prior to the election. The statute requires this to be done "not later than 4:00 p. m. of the ninetieth day before the date of such election."

The certification to the Board was that the bonds were to mature in six months period in principal amounts of $2500 commencing on July 1st, 1964, and that the levy of taxes was estimated to "average 2 mills," i. e., 20 cents on each $100 of

valuation. The Election Board published notice of the issue to be voted on accordingly.

The vote by the residents of the Village was 309 for and 219 against, and its passage was certified as required. The County Auditor entered the levy of two mills on the 1962 tax duplicate. The County Treasurer has collected the sum of $4,576.79.

As has been noted, the Attorney General seeks an adjudication as to whether there has been substantial compliance with the statute. In a case relating to the issuance of bonds under a prior Act predecessor to the present Uniform Bond Act and particularly the predecessor section of present Section 133.09, Revised Code, it was held:

"The provisions of this section are mandatory and a substantial compliance therewith is a prerequisite for the issuance of such bonds." *Board* v. *Jenkins, Auditor* (1951), 155 Ohio St., 402, 99 N. E. (2d), 179, 44 Ohio Opinions, 379.

Whether the bonds in the instant case should be "validated" depends, of course, on a reasonable construction of the term "substantial compliance." At the time of the *Jenkins case*, the time interval was about one-half that of the time under the present statute. Nor was there any "Validation of securities" Act in our statutes. The facts in that case were so contrary to a "substantial compliance" that the subsequent statutory changes and additions could not possibly have changed the decision.

The Legislature by the "Validation Act" intended to accomplish some object by its enactment. Nowhere does it mention the term "substantial compliance." It does refer to "an adjudication of . . . authority to issue securities . . . validity of proceedings taken." In this case the Village had the authority to issue if the proceedings taken were valid.

As we view it, substantial compliance in such a case means, was there an error of omission or commission in the proceedings, which substantially and materially deprived the voters of the full time and information which the statute requires in order to discuss, debate, inquire and consider whether in their opinion the burden of the additional tax for the reason and to the extent stated should be approved or disapproved.

The Validation Act, in its relief aspects, sounds in Equitable terms. It refers to the judgment of the court as a decree constituting a permanent injunction. So that it is proper to consider such case in accordance with the usages and customs of equity.

While it is true the original Resolution of Council, filed with the County Auditor, omitted the approximate date of maturity of the $25,000 of bonds, the County Auditor in order to determine amount of levy of necessity had to be advised, otherwise he could make no determination. It would seem to follow that he must have done so in order for the maturities to be set out, as they were in the Resolution filed with the Board of Elections. We conclude that no one affected was prejudiced thereby.

As to the fact that the original Resolution of Council was filed with the County Auditor 106 days rather than at least 110 days, this was an error of commission. Here, again, can it be said that any affected person was prejudiced thereby? We think not, at this point in time. The County Auditor had no duty to accept the Resolution, but he did and acted forthwith. The vital time to be met was the filing of the subsequent Resolution with the Board of Elections prior to the 90th day before the election.

While under slightly different circumstances a different conclusion might follow, it appears under these facts that there was substantial compliance with the statute and that no one suffered detriment or prejudice because of the minor errors of omission and commission. It is said that the prevailing view is that the courts will sustain the validity of bonds if possible. 15 McQuillin Municipal Corporations 3rd ed., 486, Sec. 43.14.

Since sufficient taxes have been collected to pay $2500 of principal and two years' interest, the Village is authorized to issue $22,500 of the bonds voted. An entry is accordingly made and filed.