THE STATE, EX REL. TAFT ET AL., APPELLEES, *v.* CAMPANELLA, AUDITOR, APPELLANT.

(No. 77-454—Decided June 22, 1977.)

244

*Messrs. Squire, Sanders & Dempsey, Mr. George I. Meisel* and *Mr. Robert H. Olson, Jr.,* for appellee board.

*Messrs. Ford, Whitney, Crump & Schulz, Mr. Isaac Schulz* and *Mr. John J. Whitney,* for appellee hospital.

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. Thomas P. Gill* and *Ms. Karen A. Hassenzahl,* for appellant.

*Per Curiam.* Appellant asserts as his sole proposition of law that "the use of $10.6 million of county hospital-improvement 1st mortgage revenue bonds under Revised Code Chapter 140 to retire the outstanding debt of a hospital which is secured by a mortgage on the existing facilities exceeds the scope of a proper 'public purpose' under the Constitution of Ohio."

In *State, ex rel. Gordon,* v. *Rhodes* (1951), 156 Ohio St. 81, this court considered, whether the use of revenue bonds to acquire and construct municipal off-street parking facilities constituted a public purpose. We emphasized that courts generally do not attempt a rigid definition of a public —as distinguished from a private—use, but rather prefer to leave each case to be determined by its own particular circumstances. The modern trend is to expand and liberally construe the term "public use" in considering state and mu-

nicipal activities sought to be brought within its meaning. The test of "public use" is the right of the public to receive and enjoy its benefits.

The General Assembly, in R. C. 140.02, has declared the public and governmental interest in public financing of nonprofit hospital facilities by determining that:

"The authorizations granted in Chapter 140. of the Revised Code * * * are granted for the public purpose of better providing for the health and welfare of the people of the state by enhancing the availability, efficiency, and economy of hospital facilities and the services rendered thereby, * * * and facilitating the financing of hospital facilities to be available to or for the service of the general public without discrimination by reason of race, creed, color or national origin * * *."

The parties stipulated in the Court of Appeals that the board, in adopting the resolutions, "had before it the following information:

"* * *

"(C) Financing the project, including the county's purchase of the existing facilities, through tax-exempt bonds will save an estimated $8,000,000 over the proposed term of the bonds compared with the hospital's retaining ownership and financing the project through conventional, taxable mortgage borrowing. This reduction in debt service cost of the hospital will benefit the users of the project and the existing facilities, including residents of the county. * * *

"(D) Use of approximately $10.6 million of the proceeds of the bonds to retire the hospital debt and the release of the existing first mortgage on the property of the hospital securing such indebtedness will materially facilitate the financing of the project and enhance the economy of the hospital and the services rendered by it.* * *"

In his assertion that the resolutions exceed a constitutional public purpose, appellant is either challenging the constitutionality of R. C. 140.02 or the validity of the board's determination that the resolutions do indeed serve a public purpose described in that statute.

There is a strong presumption that statutes are constitutional, and in case of doubt the statute is to be upheld. See *Cincinnati W. & Z. R. R.* v. *Commrs. of Clinton Co.* (1852), 1 Ohio St. 77, 82.

In *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, an appropriation by the General Assembly to nonprofit veterans organizations for rehabilitation of war veterans and promotion of patriotism was challenged on several grounds, including lack of public purpose. In upholding the appropriation, this court held, in paragraph one of the syllabus, that:

"An enactment of the General Assembly is presumed to be constitutional and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and the constitutional provisions are clearly incompatible."

Appellant shoulders a similar burden if he questions the *board's* determination that the use of the $10.6 million to retire debt would achieve or produce the public benefits set forth in R. C. 140.02.

The determination of whether a use of bonds constitutes a public purpose is primarily the function of the bond issuing authority, and will be overruled by the courts only if manifestly arbitrary or unreasonable. See *State, ex rel. Gordon,* v. *Rhodes, supra* (156 Ohio St. 81).

In *State, ex rel. Speeth,* v. *Carney* (1955), 163 Ohio St. 159, a mandamus action to compel the county auditor to execute a note for the construction of a county subway, this court held, in paragraph ten of the syllabus, that:

"In the absence of evidence to the contrary, public officials, administrative officers, and public authorities, within the limits of the jurisdiction conferred upon them by law, will be presumed to have properly performed their duties in a regular and lawful manner and not to have acted illegally or unlawfully, and, it will be presumed that public authorities, in determining the advisability of constructing a public project, have considered the necessary facts and have sufficiently satisfied themselves as to the propriety and

feasibility of the construction, as a predicate for the issuance of bonds or notes to pay the cost thereof."

The board's findings were based on reliable and uncontroverted evidence. Its determination was not manifestly arbitrary or unreasonable and will not be disturbed by this court. The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, P. BROWN and SWEENEY, JJ., concur.

CELEBREZZE, W. BROWN and LOCHER, JJ., dissent.

CELEBREZZE, J., dissenting. I respectfully dissent from the majority opinion. In my view utilization of $10.6 million of the proposed $26 million in county bonds for the retirement of the hospital's outstanding indebtedness to private bondholders does not constitute a proper public purpose.

Although purporting to review the entirety of the complex transaction between the privately owned nonprofit corporation and the county, the appellate court below specifically remarked that it was "not concerned with the terms of the lease, the quality of the revenue bonds, the decision of the commissioners to give Deaconess Hospital an option to purchase the facilities, nor the adequacy of the amount of the option price by which Deaconess Hospital may acquire the facilities after the bonds are retired." I am convinced that had that court considered the above factors it would have been disinclined to issue the requested writ.

R. C. 140.02 sets forth the public purpose of hospital agencies. By alleging that the purchase and leaseback of the hospital will enhance the availability,[1] efficiency and economy of its facilities, appellees attempt to apply a veneer of public purpose to what is, in reality, a most favorable arrangement for the hospital.

---

[1] This court may take judicial notice of the fact that Cleveland Metropolitan General Hospital, a county owned facility, is located approximately 1.6 miles distant from the site of Deaconess Hospital.

It will be observed that affirmance of the judgment below allows Deaconess Hospital to retire its pre-existing debt and to finance construction and remodeling at a low cost, by means of tax-exempt hospital-improvement bonds. Upon retirement of the bonds the hospital is then given the option to repurchase the facilities for the sum of $100, undeniably a bargain at that amount.[2]

That this transaction is in the best interests of the hospital is readily apparent. However, it would seem that the stated public purpose is presently a fervent hope, at best, if one may assume that the savings to the hospital will eventually percolate downward to the users of the facilities. In addition, as the borrowing power of the county is increasingly invoked in such attempts to indirectly accomplish public purposes, there is a commensurable increase in the risk that the county's borrowing power will be adversely affected if these obligations are not met.

Because the majority, by its decision, has placed the imprimatur of this court upon a refinancing arrangement which does not represent a proper public purpose, I must dissent.

W. Brown and Locher, JJ., concur in the foregoing dissenting opinion.

---

[2] A curious feature of the arrangement *sub judice* is that the present hospital administration (which seems to have encountered some difficulty in repaying its $10.6 million indebtedness) will apparently retain their positions when the hospital becomes the county's lessee.