COUNTY OF STARK, APPELLEE, *v.* FERGUSON, AUDITOR, ET AL.; BOWMAN, COUNTY AUDITOR, APPELLANT.

(No. 5519—Decided June 3, 1981.)

· *Messrs. Taft, Stettinius & Hollister,* Mr. *Henry C. Kasson,* Mr. *Richard D. Spoor* and Mr. *Thomas T. Terp,* for appellee.

*Mr. James R. Unger,* prosecuting attorney, and *Mr. Loren E. Souers, Jr.,* for appellant, William B. Bowman, Stark County Auditor.

MILLIGAN, J. This is an appeal by defendant-appellant, William B. Bowman, the Stark County Auditor, from a judgment entered by the Court of Common Pleas of Stark County on the "Petition and Complaint for Validation of Economic Development Revenue Bonds" filed by plaintiff-appellee, Stark County. The economic development revenue bonds at issue here are for the purpose of acquiring and constructing an office building containing space for rent to physicians and dentists and other facilities consistent therewith, including a pharmacy and laboratory. The judgment appealed from provides:

"It is hereby ORDERED, AD-JUDGED and DECREED that the County has authority to issue the Economic Development Revenue Bonds pursuant to Article VIII, Section 13 of the Constitution of the State of Ohio and Chapter 165 of the Ohio Revised Code, and that such bonds will be valid special obligations but not a debt of Plaintiff within the meaning of Article XII, Section 11 of the Constitution of the State of Ohio, and that the proceedings herein described and the actions taken and to be taken are valid."

The facts giving rise to the instant case are as follows:

The Stark County Community Improvement Corporation (CIC) is a corporation not for profit organized under R.C. Chapter 1724. Stark County has designated the CIC as its agency for industrial, commercial, distribution and research development pursuant to R.C. 1724.10. The CIC has prepared a plan of industrial, commercial, distribution and research development, pursuant to R.C. 1724.10, which plan was executed by and between Stark County and the CIC on March 27, 1974.

On February 14, 1980, the Belpar Professional Building (Belpar), a private general partnership, submitted an application for industrial revenue bond financing to the CIC. The application requested financing in the amount of $1,650,000 to construct a building containing office and retail space for medical concerns.

On May 15, 1980, the CIC, pursuant to R.C. 165.03(C), certified to Stark County that the project described in the Belpar application was in accordance with the Stark County plan of industrial, commercial, distribution and research development; and, thus, CIC approved said application subject to certain specified conditions.

Also on May 15, 1980, the Board of Commissioners of Stark County passed a resolution authorizing execution of an agreement, on behalf of Stark County (the county), with Belpar. The agreement provided that the county would issue the bonds in the amount requested and lend the proceeds therefrom to Belpar to acquire and construct the proposed building.

On June 12, 1980, the Board of Commissioners of Stark County passed a resolution determining that it was necessary to institute an action to obtain an adjudication of the county's authority to issue the above-mentioned bonds.

On August 26, 1980, the county filed its "Petition and Complaint for Validation

of Economic Development Revenue Bonds," pursuant to R.C. 133.71 to 133.80. Listed as defendants therein were Thomas E. Ferguson, Auditor of the state of Ohio; William Bowman, Stark County Auditor; and "[a]ll property owners, taxpayers and citizens of Stark County, Ohio, including non-resident owners of property subject to taxation or special assessment by Stark County, Ohio, and all other persons affected by or interested in the issuance of securities by Stark County, Ohio."

Defendant Thomas E. Ferguson, Auditor of the state of Ohio, through the Attorney General's office, declined to participate in the validation proceedings. Defendant William Bowman, Stark County Auditor, filed an answer on October 6, 1980.

On October 8, 1980, a hearing was held on the petition. At that time, the county presented the testimony of Dr. Paul Smith, a Belpar partner. Dr. Smith described the project as follows:

"A. Okay. Well, the location of the project is known as the Belpar area, which is on Dressler Road in Jackson Township, Stark County. The address would be 4565 Dressler Road. We're proposing a building, general building of gross size of approximately 33,000 square feet with occupants of professional tenants — physicians and dentists, a pharmacy hopefully to be located there, medical laboratories, dental laboratories, and just other tenants of that nature. We propose up to twenty separate office spaces, in addition to the laboratories and the pharmacy. We're hoping to provide a total of 27,000 rentable square feet. * * * What else was it you wanted to know?

"Q. The employment figures.

"A. A rough estimate of the employment to the area would be somewhere in the nature of * * * when it's totally finished and totally occupied * * * of approximately 170 people, 175 people, is our estimate, but it would vary greatly with the nature of the tenants.

"Q. Could you describe also for the Court a little more detail of the nature of the dental and the medical practice that will be on-going there? For example, is it a non-profit clinic or is it a fee for service basis?

"A. Everyone involved at this time, we're talking about a fee for service, practice of either general dentistry or a specialized field of dentistry or medicine.

"Q. And so the patients essentially would be there. * * * They would take as many patients from the public as they could handle? There's no restriction of the * * *

"A. None whatsoever, no restrictions."

On November 6, 1980, the Court of Common Pleas of Stark County filed its opinion and judgment entry upholding the county's authority to issue the bonds requested for the Belpar project. The opinion, in part, stated:

"After reading the file and memorandum of counsel, the Court agrees with plaintiff's [the county's] counsel. An office building, with doctors, dentists, labs and a public pharmacy as tenants falls within the definitions of 'commerce' cited. In fact, in one of the cases cited by Defendant [the Stark County Auditor], *Doctors Hospital* v. *Board of Tax Appeals* [1962], 173 Ohio St. 283 [19 O.O.2d 154], the Court said 'operation of an office building is a commercial enterprise'. Doctors and dentists serve the public through their patients, which they limit to assure high quality care. The public benefits, too, from the jobs that will be available, the property and income tax revenues, etc."

On appeal, the Stark County Auditor (the Auditor) raises three assignments of error:

"1. The trial court erred to the prejudice of the defendant [the Auditor] in its determination that the operation of an office building to be used primarily by physicians and dentists in the local conduct of their private, professional practices constitutes 'commerce' within the meaning of

either Article VIII, Section 13 of the Constitution of the state of Ohio or Chapter 165 of the Ohio Revised Code.

"2. The trial court erred to the prejudice of the defendant by failing to determine that the issuance of tax-exempt bonds to finance the construction of a professional office building which will subsidize the private practice of local physicians and dentists constitutes a lending of aid and credit to a private enterprise in direct contravention of Article VIII, Section 6 of the Constitution of the state of Ohio.

"3. The trial court erred to the prejudice of the defendant in its determination that the subsidization of the private use of a professional office building primarily for the benefit of a select group of physicians and dentists serving their private patients constitutes a public purpose that will support a loan of the proceeds of tax-exempt bonds issued by a political subdivision of the state of Ohio."

The Ohio Constitution broadly limits the authority of the state to lend its credit:

"The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or association in this state, or elsewhere, formed for any purpose whatever." Section 4, Article VIII, Constitution.

Consistent with the prohibition of Section 4, Article VIII of the Ohio Constitution, the Ohio Supreme Court in 1964 struck down economic development bond funding to private corporations and called for a constitutional amendment creating an exception to the general prohibition. *State, ex rel. Saxbe,* v. *Brand* (1964), 176 Ohio St. 44 [26 O.O.2d 309]. Thereafter, effective May 4, 1965, Section 13, Article VIII of the Ohio Constitution, was adopted. That section, as amended effective November 5, 1974, provides, in part:

"To create or preserve jobs and employment opportunities, to improve the economic welfare of the people of the state, to control air, water, and thermal pollution, or to dispose of solid waste, it is hereby determined to be in the public interest and a proper public purpose for the state or its political subdivisions, taxing districts, or public authorities, its or their agencies or instrumentalities, or corporations not for profit designated by any of them as such agencies or instrumentalities, to acquire, construct, enlarge, improve, or equip, and to sell, lease, exchange, or otherwise dispose of property, structures, equipment, and facilities within the State of Ohio for industry, *commerce,* distribution, and research, to make or guarantee loans and to borrow money and issue bonds or other obligations to provide moneys for the acquisition, construction, enlargement, improvement, or equipment, of such property, structures, equipment and facilities. Laws may be passed to carry into effect such purposes and to authorize for such purposes the borrowing of money by, and the issuance of bonds or other obligations of, the state, or its political subdivisions, taxing districts, or public authorities, its or their agencies or instrumentalities, or corporations not for profit designated by any of them as such agencies or instrumentalities, and to authorize the making of guarantees and loans and the lending of aid and credit, which laws, bonds, obligations, loans, guarantees, and lending of aid and credit shall not be subject to the requirements, limitations, or prohibitions of any other section of Article VIII, or of Article XII, Sections 6 and 11, of the Constitution, provided that moneys raised by taxation shall not be obligated or pledged for the payment of bonds or other obligations issued or guarantees made pursuant to laws enacted under this section." (Emphasis added.)

The consummate issue in this case is whether the acquisition and construction of an office building containing rental space for physicians, dentists, a pharmacy

and a laboratory, constitute "commerce" as that term is used in the authorization to execute economic development revenue bonds. The answer to that question will be dispositive of the first two assignments of error.

We find that the proposed construction, operation and maintenance of this medical-dental-pharmacy-laboratory building constitutes "commerce" within the meaning of Section 13, Article VIII of the Ohio Constitution.

As pointed out by counsel on both sides, the word "commerce" is a word with differing meaning in different contexts. It has been used in cases under the Robinson-Patman Act, the Clayton Act, the Sherman Anti-Trust Act and the Federal Employers' Liability Act, in assessing and determining the question of tax exemption for charitable versus private uses, and is, of course, defined in the dictionaries.

Thus, for purposes of determining applicability of the Sherman Anti-Trust Act, the Supreme Court held:

"* * * Whatever else it may be, the examination of a land title is a service, the exchange of such a service for money is 'commerce' in the most common usage of that word. * * *" *Goldfarb* v. *Virginia State Bar* (1975), 421 U.S. 773, at 787-788.

The logic of the Court of Common Pleas of Hamilton County is impelling, in a case similar to the one *sub judice,* where the court held that a medical office building constituted "commerce" for the purpose of determining eligibility for bond financing:

"The Court further finds that said facility will be used in part for research purposes and in part for commercial purposes, the commercial purposes being clearly the exchange of services[,] to-wit[,] medical services for money as the United States Supreme Court in *Goldfarb* v. *Virginia State Bar,* 421 U.S. 773 (1975) has so held." *County of Hamilton* v. *Ferguson* (Oct. 14, 1980), Hamilton C.P.

No. A-8005364, unreported.

*State, ex rel. Brown,* v. *Beard* (1976), 48 Ohio St. 2d 290 [2 O.O.3d 438], is distinguishable. The Supreme Court held, in a case involving construction and rehabilitation of low-income housing, that the Ohio Housing Development Board failed to show that the project constituted "industry, commerce, distribution * * * [or] research" as required by Section 13, Article VIII of the Ohio Constitution.

In the instant case the facility will provide an on-going, continuing exchange of both services and goods; it will be a place where people go to do business with doctors, dentists, laboratory technicians, and pharmacists. The point is well taken that, in the instance of public housing, people will come there, moving away from the place where they formerly did business, and will not, necessarily, be receiving an on-going, *continuous* exchange of goods and services. The only exception, of course, is the receipt of occupancy upon the payment of rent.

The trial court, in the present case, found that:

"An office building, with doctors, dentists, labs and a public pharmacy as tenants falls within the definitions of 'commerce' cited."

We find no error in the determination by the trial court and overrule the first two assignments of error.

*Does the proposed facility and operation thereof constitute such a "public purpose" as will support the issuance of industrial development revenue bonds?*

As noted earlier, the Board of Commissioners of Stark County and the Stark County Community Improvement Corporation (CIC) executed a plan of industrial, commercial, distribution and research development in 1974. The application in this case was submitted under the umbrella of that plan. The CIC examined the application and certified that the project was consistent with the plan. The Board of County Commissioners of Stark County, upon considering the mat-

ter, passed a resolution authorizing an agreement for the issuance of bonds and the execution of loans to acquire and construct the facility.

The court of common pleas, in the validation proceedings, found that:

"Doctors and dentists serve the public through their patients, which they limit to assure high quality care. The public benefits, too, from the jobs that will be available, the property and income tax revenues, etc."

The relevant evidence in this case is the following testimony, noted *supra*, of Dr. Paul Smith at the October 8, 1980 hearing on the petition:

"[Dr. Smith:] A. A rough estimate of the employment to the area would be somewhere in the nature of * * * when it's totally finished and totally occupied * * * of approximately 170 people, 175 people, is our estimate, but it would vary greatly with the nature of the tenants."

The polestar of "proper public purpose" and "public interest" is the creation or preservation of jobs and employment opportunities. Section 13, Article VIII, Constitution.

The determination of whether the authorization of such bonds should be made in the public interest is essentially a political question, properly decided by the legislative and executive branches of government, not the judiciary. The pur-

pose of judicial review is to determine whether the legislative and executive branches of government, in their action, were manifestly arbitrary or unreasonable. *State, ex rel. Taft,* v. *Campanella* (1977), 50 Ohio St. 2d 242 [4 O.O.3d 423].

In this case, the trial court found that the determination was not arbitrary or unreasonable and we agree.

The third assignment of error is overruled.

The judgment of the Court of Common Pleas of Stark County is affirmed.

*Judgment affirmed.*

HENDERSON, P.J., concurs.

RUTHERFORD, J., concurring in part and dissenting in part. I concur in the overruling of appellant's Assignment of Error No. 1.[1]

Limited to the facts of this case, I dissent from the overruling of appellant's Assignments of Error Nos. 2[2] and 3.[3] My dissent as to the overruling of Assignment of Error No. 2 is dependent upon the validity of my dissent to the overruling of Assignment of Error No. 3, and my resulting dissent to the affirmance of the judgment of the Court of Common Pleas of Stark County, which, in my opinion, ought to be reversed.

I concur with the finding in the ma-

[1] Assignment of Error No. 1 reads: "The trial court erred to the prejudice of the defendant in its determination that the operation of an office building to be used primarily by physicians and dentists in the local conduct of their private, professional practices constitutes 'commerce' within the meaning of either Article VIII, Section 13 of the Constitution of the state of Ohio or Chapter 165 of the Ohio Revised Code."

[2] Assignment of Error No. 2 reads: "The trial court erred to the prejudice of the defendant by failing to determine that the issuance of tax-exempt bonds to finance the construction of a professional office building which will

subsidize the private practice of local physicians and dentists constitutes a lending of aid and credit to a private enterprise in direct contravention of Article VIII, Section 6 of the Constitution of the state of Ohio."

[3] Assignment of Error No. 3 reads: "The trial court erred to the prejudice of the defendant in its determination that the subsidization of the private use of a professional office building primarily for the benefit of a select group of physicians and dentists serving their private patients constitutes a public purpose that will support a loan of the proceeds of tax-exempt bonds issued by a political subdivision of the state of Ohio."

jority opinion that, as related to the facts of this case, the polestar determination of "proper public purpose" and "public interest" under the provisions of Section 13, Article VIII of the Ohio Constitution is "to create or preserve jobs and employment opportunities."

A copy of the "Petition and Complaint for Validation of Economic Development Revenue Bonds" is attached hereto as Appendix A a copy of pertinent answers to questions Nos. 8, 17, 18, 19, 20 and 21, contained within the application for "Revenue Bond Financing" by tax-free municipal bonds is attached hereto as Appendix B the "Resolution Authorizing Execution of Agreement with Belpar Professional Building" is attached hereto as Appendix C a copy of the agreement executed between Stark County and the Belpar Professional Building, an Ohio general partnership, is attached hereto as Appendix D a copy of the only testimony presented at the hearing before the court of common pleas, being that of Dr. Paul Smith, one of the "Belpar" partners, is attached hereto as Appendix E and a copy of the opinion and judgment entries of the Court of Common Pleas of Stark County is attached hereto as Appendix F.

In my opinion, the evidence of record is insufficient as a matter of law to meet the polestar requirement of Section 13, Article VIII of the Ohio Constitution as intended by the legislature, i.e., "[t]o create or preserve jobs and employment opportunities, [and] to improve the economic welfare of the people of the state, * * *." The evidence is found in the following answers to questions Nos. 17, 18 and 20, contained in the application for Revenue Bond Financing: Question No. 17: "A. Original employees and tenants will be transferees from other locations. Later employees may be new employees depending on occupants." Thus, only 13 jobs will be preserved. Question No. 18: "A. Present proposed tenants would move from present locations." However, no new employees are specified. Lastly, Question No. 20: "A. The level of operations will be greater if the proposed improvements can be completed. The exact degree of increase will vary with each tenant."

If this construction project can qualify, in the interest of uniformity, like financing by issuance of municipal bonds, under the provisions of Section 13, Article VIII of the Ohio Constitution, could extend to all constructions of similar nature.

Upon the basis of my finding that issuance of the bonds would not be in compliance with Section 13, Article VIII of the Ohio Constitution, I would sustain Assignments of Error Nos. 2 and 3.

It is further noted that the petition speaks of security by mortgage; but, there is nothing in the agreement, the resolution or the judgment entry of the court of common pleas providing that proceeds from the bonds, when loaned to the "Belpar" partnership, be secured by a *first* mortgage.

For the reason set forth, it is my opinion that the judgment of the Court of Common Pleas of Stark County ought to be reversed.