**CITY OF NORTON, Appellee,**

v.

**LIMBACH et al., Appellants.**

[Cite as *Norton v. Limbach* (1989), 65 Ohio App.3d 709.]

Court of Appeals of Ohio,
Summit County.

No. 14085.

Decided Dec. 20, 1989.

710

[redacted]

---

*David A. Rogers,* for appellee.

*Fred J. Deuber,* for appellants.

---

REECE, Judge.

On August 3, 1988, Summit Energy Storage, Inc. ("Summit Energy") entered into a written agreement with the city of Norton, Ohio ("Norton"), wherein Norton agreed to issue industrial revenue bonds pursuant to Section 13, Article VIII, Ohio Constitution and R.C. Chapter 165, in an amount not to exceed $750 million. Norton and Summit Energy agreed that interest payable to bond purchasers would be subject to federal and state income taxation.

Summit Energy agreed that all proceeds from the bond sale, excluding issuance expenses, would be invested in other securities yielding a higher rate of interest than that returned by the bonds. Summit Energy and Norton anticipate that such issue and investment will yield an estimated $6 million profit, to be utilized to secure an option to purchase a closed limestone mine in Norton currently owned by PPG Industries, Inc., and to pay for feasibility and engineering studies regarding the potential for hydroelectric energy production at the mine (the "Project"). The total construction cost of the proposed generating facility is estimated to exceed $1 billion. The potential generating capacity of the Project is estimated to equal that of the Niagara Falls hydroelectric works.

Proponents of the Project envision a facility which would generate electricity by day through draining a surface reservoir through hydroelectric generators into the subterranean limestone mine, then use electricity at night to

pump the water from the mine back into the reservoir. Thus, although the Project would be a net user of electricity, production of electricity during the day, during peak demand for that commodity at higher cost rates, is projected to offset the net cost of electricity purchased during nocturnal, off-peak hours, with resultant financial gain.

Pursuant to R.C. 133.72, Norton filed a "Petition and Complaint for Validation of Industrial Development Revenue Bonds," with a supporting memorandum, naming the Summit County Auditor, the State Tax Commissioner, and all property owners, taxpayers and citizens of Norton, and all other persons affected, as defendants.

The November 22, 1988 hearing date was noticed by publication pursuant to R.C. 133.74. Fred J. Deuber filed an answer to the complaint as a citizen of Norton and a defendant to the action, demanding that the petition be dismissed.

The trial court held a brief hearing on November 22, 1988, then issued an order on November 30, 1988, granting Deuber, Norton, the Summit County Auditor and State Tax Commissioner leave to file briefs and memoranda regarding their respective positions concerning the petition. Deuber and Norton timely filed briefs. The State Tax Commissioner filed a letter with the court dated February 3, 1989, stating that, pursuant to R.C. 133.73:

" * * * The Tax Commissioner, by and through her counsel, and the Attorney General have examined the Petition and Complaint for Validation of Industrial Development Revenue Bonds filed on October 7, 1988, and said petition appears to be in order. Specifically the Tax Commissioner and the Attorney General have no reason to believe that the petition is defective, insufficient, or untrue, or that the issuance of the Industrial Development Revenue Bonds is not lawful or has not been authorized by R.C. 165.02 and R.C. 165.03."

The court's order of validation was entered on March 23, 1989, finding the proposed bond issue and ordinance proper. On March 22, 1989, Deuber received from Norton a copy of the order with a certificate of mailing dated March 21, 1989. On March 24, 1989, Deuber moved the trial court to vacate the order for failure to comply with the local court rules, and also filed a written request for separate findings of fact and conclusions of law. The trial court overruled the motion to vacate on April 5, 1989.

Deuber appeals, asserting four assignments of error.

### Assignment of Error IV

"Without findings of fact and conclusions of law which are essential to an appeal, this defendant alleges that the trial court erred in validating the proposed bond issue, and by inference, erred in its facts as follows:

"A.    The petition is defective and untrue because it does not provide moneys for acquisition, construction, enlargement, improvement or equipment of such property, structures, equipment and facilities as required in Ohio Constitution Article VIII, Section 13.

"B.    The petition is defective and untrue because it does not create new employment within the State as required by Ohio Constitution Article VIII, Section 13.

"C.    The petition is insufficient because it does not comply with ORC 133.72 which provides that the complaint contain the terms of the securities to be issued and the county in which the proceeds of the securities are to be expended.

"D.    The petition is defective because it adds in paragraph 6 that the bonds are for the purpose of 'financing'—a word not used in Article VIII, Section 13 and therefore not a permissable [sic] purpose."

Deuber essentially argues in his brief to this court that Norton is without authority to issue industrial revenue bonds for the purposes of arbitrage investment, and questions the court's validation order in four ways.   In a separate "Statement of Issues Presented," Deuber questions whether the proposed bond issue qualifies as a "lawful public purpose" under the Ohio Constitution, R.C. Chapter 165 and R.C. 133.71.   Because Deuber's "issue presented" outlines his assigned error and arguments on appeal, it shall be considered herein.

Deuber first claims that the petition is defective because the bond issue does not provide funds for "acquisition, construction, enlargement, improvement or equipment of such property * * *," as is required by Section 13, Article VIII, Ohio Constitution.   We note, however, that the trial court's validation order, after reciting the procedural history of the cause, specifically determined that "[Norton] has lawful authority to issue and sell the bonds upon the terms set forth in the Petition * * * " and that "the Project to be *acquired, constructed, equipped* and financed with the proceeds of the Bonds * * * " is within the provisions of Section 13, Article VIII, Ohio Constitution (emphasis supplied).   Thus, the trial court found that the bond issue would provide funds as required by the Ohio Constitution, and approved the legislative action of Norton.

The legislature has the primary responsibility for deciding whether a particular purpose is public, and courts of review will not overrule this legislative determination unless it is "manifestly arbitrary or unreasonable." *Bazell v. Cincinnati* (1968), 13 Ohio St.2d 63, 42 O.O.2d 137, 233 N.E.2d 864, certiorari denied (1968), 391 U.S. 601, 88 S.Ct. 1865, 20 L.Ed.2d 845.   "The

modern trend is to expand and liberally construe the term 'public use' in considering state and municipal activities sought to be brought within its meaning." *State, ex rel. Taft, v. Campanella* (1977), 50 Ohio St.2d 242, 244–245, 4 O.O.3d 423, 425, 364 N.E.2d 21, 23. See, also, Gold, Public Aid to Private Enterprise Under the Ohio Constitution: Sections 4, 6 and 13 of Article VIII in Historical Perspective (1985), 16 U.Toledo L.Rev. 405.

■ The record demonstrates that the project contemplates the purchase of an option to buy the limestone mine currently owned by PPG Industries, Inc. The Norton legislative body determined that bond funds would be utilized for this acquisition. The trial court's order validated this legislative decision. Deuber has not shown that the legislative body or the trial court's decisions were manifestly arbitrary or unreasonable, nor do we so find.

■ Deuber next asserts that the petition is defective because "it does not create new employment within the State * * *" as is required by the Constitution. Deuber maintains that the "polestar of ' * * * proper public purpose' and 'public interest' is the creation or preservation of jobs and employment opportunities[,]" citing *Stark Cty. v. Ferguson* (1981), 2 Ohio App.3d 72, 77, 2 OBR 81, 86, 440 N.E.2d 816, 821.

Deuber answers his own question. The requirement he asserts is not that of *new* employment, but rather speaks to *creation or preservation* of jobs and employment opportunities. Phrased disjunctively, this provision does not require new employment, and Deuber does not challenge the Project's potential for preservation of jobs or employment.

■ Deuber further claims that the petition does not comply with the requirements of R.C. 133.72:

"The petition for validation shall contain, in ordinary and precise language and by references or exhibits, a statement of * * * the amount and terms of the securities to be issued, the county or counties in which the proceeds of the securities, or any part thereof, are to be expended, and other pertinent matters."

Paragraph Six of the petition indicates that the ordinance enacted by Norton authorized issuance of bonds in an aggregate principal amount "currently estimated not to exceed $750,000,000." The ordinance, No. 76–1987, was attached to the petition as an exhibit, and states in Section 1 that Norton "will undertake to authorize and issue its bonds from time to time, in one or more series, with such rates, maturities and other terms as may be requested by [Summit Energy]," up to the amount of the bond issue. Paragraph ten of the petition states that, upon the court's validation, Norton will "determine

the final terms of the bonds, including but not limited to the maturity schedule, interest rate or rates and purchase price[.]"

R.C. Chapter 165 requires that Norton expend the bond proceeds only within the municipality. The petition, the Norton ordinance attached as Exhibit "A," and the agreement between Norton and Summit Energy attached as Exhibit "B," define the Project as wholly within the city of Norton, and state that "[t]he proceeds from the sale of the Bonds shall be used solely for the purpose of the Project * * *." The city of Norton lies wholly within Summit County. The limestone mine intended to be utilized for hydroelectric production also lies within Summit County, as is referenced by the record below in the Federal Energy Regulatory Commission's February 3, 1986 order issuing Summit Energy a preliminary permit to analyze the Project. Therefore, pursuant to R.C. 133.72, the county in which the proceeds are to be expended is identified.

Accordingly, the petition complies with R.C. 133.72, and the trial court did not err by so determining.

■ Finally, Deuber argues that the petition is defective because it states that, among other reasons, the bonds are for the purpose of "financing," a word not used in Section 13, Article VIII, Ohio Constitution. That section states that "it is determined to be in the public interest and a proper public purpose for the state or its political subdivisions * * * to make or guarantee loans and to borrow money and issue bonds" to provide funds for acquisition, construction, enlargement, improvement or equipment of property for industry, commerce, distribution and research and facilities. We also note that the court below inserted the term "financing" in its order, equating "financing" with the "make or guarantee loans" language of the constitutional provision. Considered in context, we find no error in the language of the petition.

■ The thrust of Deuber's assigned error is that Norton is without authority to issue industrial revenue bonds for purposes of arbitrage investment. Norton claims that as a matter of course, arbitrage bonds have been issued by other Ohio political subdivisions in the past, but concedes that this case presents an issue of first impression. Our research has not disclosed Ohio jurisprudence deciding the issue before this court.

The Supreme Court of Florida recently determined a similar matter. In *Florida v. Panama City Beach* (Fla.1988), 529 So.2d 250, the Florida Supreme Court reviewed a circuit court's order validating the issuance of investment revenue, or arbitrage, bonds. Panama City Beach's city commission adopted a resolution authorizing the issuance of up to $300 million in investment revenue bonds, the proceeds of which were intended to be invested with an

insurance company or other investment institution at a guaranteed rate of return superior to that yielded by the bonds. By this action, the city expected to gain a profit of some $1.5 million, to be used for municipal purposes designated by subsequent resolution.

The Florida Supreme Court engaged in a thorough historical overview of the development of arbitrage bonds and their use as municipal funding devices. Accordingly, we reference its findings.

Section 2, Article VIII, Florida Constitution, confers authority upon municipalities to issue bonds. The Florida Supreme Court considered the issue in the case before it to be whether arbitrage bonds contemplate a proper municipal purpose.

The court determined that the bonds qualified as revenue bonds because they are not payable from *ad valorem* taxes, do not pledge the property, credit or general tax revenue of the city, and that by virtue of the bond issue, the city would obtain money to be used only for valid municipal purposes. *Florida v. Panama City Beach, supra,* at 256. Panama City Beach agreed that interest paid to bond holders would not be exempt from income taxation.

We are presented with very similar facts in the instant case. Guided by the Florida Supreme Court's well-reasoned opinion, and applying the same to Section 13, Article VIII, Ohio Constitution and R.C. Chapters 133 and 165, and the grant of authority to municipalities therein, we find no prohibition of Norton's use of arbitrage financing to acquire the funds to pursue the Project.

Like the Florida Supreme Court, we have misgivings over a $750 million bond issue which is calculated to derive only a $6 million benefit. In addition, there may be those who would question the efficacy of a hydroelectric facility which is a net user of energy, and which would daily flush millions of gallons of water from a surface reservoir into a subsurface cavern, only to pump the cavern out each night. It is not, however, the function of this court to decide whether the proposed bond issue or the underlying Project is wise, or even fiscally sound; that decision is properly left to the legislative body.

Accordingly, Deuber's fourth error assigned is not well taken.

### Assignments of Error

"I. The trial court erred in failing to make neither [*sic*] written finding nor [*sic*] decision in this case.

"II. The trial court erred in overruling defendant's motion to vacate the judgment on the grounds that plaintiff had failed to obtain this defendant's signature on the judgment order, prepared by the plaintiff, as required by Summit County Court local rule 7.17.

"III. The trial court erred in failing to respond to defendant's written request for written findings of fact and conclusions of law, as required by ORCP 52."

Because each of these assignments of error are interrelated, they are considered together.

■ Deuber's first and third errors assigned assert that the trial court failed to make a written finding or decision in the instant case, after Deuber filed a motion with the court for written findings of fact and conclusions of law pursuant to Civ.R. 52. We find no merit in Deuber's contentions.

R.C. 133.71 to 133.80 authorize judicial procedure for validating public securities and proceedings taken thereby. See *Mount Sterling v. Tracy* (C.P.1963), 92 Ohio Law Abs. 457, 25 O.O.2d 300, 192 N.E.2d 1. In particular, it is " * * * clear that R.C. 133.71(B) authorizes judicial review, at the behest of the city, of the validity of all proceedings taken in connection with the bonds it proposes to issue and the city's authority to do so. * * *." *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 76, 25 OBR 125, 129, 495 N.E.2d 380, 384.

Pursuant to R.C. 133.71(B):

"An issuer * * * may file a petition for validation and thereby commence an action for the purpose of obtaining an adjudication of its authority to issue the securities and the validity of the proceedings taken and proposed to be taken in connection therewith * * *."

Under R.C. 133.73, upon filing of the R.C. 133.71(B) petition, the trial court must issue an order in general terms in the form of a notice to the state and to all property owners, taxpayers, citizens, and others affected, requiring the state to appear through the attorney general, and all such persons, to appear and be heard before the court, "and show cause why the prayer of the petition should not be granted and the proceedings and the securities validated and confirmed as therein prayed." In addition, the petition is to be served upon the prosecuting attorney in each county where the issuer lies and where any proceeds of the bond sale are to be expended. These attorneys are to carefully scrutinize the petition, "and if it appears, or there is reason to believe, that the petition is defective, insufficient, or untrue, or if in the opinion of said attorney or attorneys, the issuance of the securities is not lawful or has not been duly authorized, defense shall be made thereto as may be deemed proper by said attorney or attorneys." R.C. 133.73.

In this case, the Summit County prosecutor appeared at the November 22, 1988 hearing and voiced no opposition. The Attorney General submitted a position by letter to the court, finding the petition to be in order, and stating

that there was "no reason to believe that the Petition was defective, insufficient, or untrue, or that the issuance [of the] Bonds was not lawful or had not been authorized by R.C. 165.02 and R.C. 165.03." [1]

In accordance with R.C. 133.79, "[in] the event the decree of the common pleas court determines that the issuer has authority to issue the securities upon the terms set forth in the petition and adjudicates the legality of all proceedings taken and proposed to be taken in connection therewith," the order becomes binding either if no appeal is taken, or if the decree of the trial court is affirmed.

Each of the above sections refers to the lawfulness and legality of the bond issue and the proceedings taken thereby. In *Middletown v. Ferguson, supra* at 76, 25 OBR at 129, 495 N.E.2d at 384, the Supreme Court stated that judicial review is limited to the validity of the proceedings and the issuer's authority. Thus, the trial court, when presented with the petition pursuant to R.C. 133.71 *et seq.*, encountered only questions of law. Indeed, Deuber's arguments to this court essentially embrace the legal issue of whether the proposed bond issue is proper, and whether Norton is vested with the requisite authority to issue the bonds.

■ Civ.R. 52 contemplates those cases where questions of fact are tried to the court without a jury. Such is not the case in the instant action. We therefore hold that Civ.R. 52 was not applicable to the validation proceedings held in this case in the common pleas court; even if we were to conclude that Civ.R. 52 could be properly invoked, the order issued by the trial court satisfies the rule, because only issues of law were before the court. Thus, the trial court did not err by declining to address Deuber's Civ.R. 52 motion.

Accordingly, Deuber's first and third assignments of error are not well taken.

■ In his second error assigned, Deuber claims that the trial court erred in denying his motion to vacate the order, based upon Norton's failure to obtain Deuber's approval of the order prior to filing, pursuant to Loc.R. 7.17, Summit County Court of Common Pleas. Norton claims that subsection 3 of Loc.R. 7.17 permits the court, at any time, to enter its own judgment order, and suggests that the court did so.

Norton and Deuber agree that Norton mailed to Deuber, without a cover letter, a copy of the order, with a March 21, 1989 certificate of mailing. It is undisputed that the order was not filed until March 23, 1989. The order

---

1. The Attorney General filed a similar letter with this court, on July 10, 1989, in lieu of an appellate brief, reiterating this position.

evidences signature approval lines for each of the other defendants, the State of Ohio Tax Commissioner and the Summit County Auditor, each signed by Norton's counsel per telephone approval, but no similar line for Deuber. The certificate of service thereon specifically notes Deuber as "appearing for himself."

Although we do not accept Norton's suggestion that the trial court entered its own judgment order as the order herein, and granted it would have been the professional, courteous, and proper thing to do, we cannot find any error prejudicial to Deuber in the filing of the order without his approval. Had Deuber been approached for approval, it is doubtful that he would have assented to the terms of the order, given the tenor of his arguments to both this court and the court below.

The purpose of the local rule is to permit the parties to ensure the veracity and general correctness of the document. Because Norton and Deuber essentially agree upon the facts, we find no error prejudicial to Deuber in Norton's failure to secure Deuber's approval of the order, nor in the trial court's denial of Deuber's motion to vacate the order.

Deuber's second error assigned is overruled.

Based upon the foregoing, this court finds that each of Deuber's assignments of error are not well taken. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.