**State, ex rel. Board of County Commissioners**

v.

**Zupancic, Auditor**

*[Cite as 4 AOA 491]*

*Case No. 89-L-14-042*
*Lake County, (11th)*
*Decided June 20, 1990*

*E. W. Mastrangelo, 35100 Euclid Avenue, Willoughby, Ohio 44094, John Weld Peck, 425 Walnut Street, Suite 2200, Cincinnati, Ohio 45202, for Relators-Appellees.*

*Steven C. Latourette, Prosecuting Attorney, Michael P. Brown, Assistant Prosecutor, 47 North Park Place, P. O. Box 490, Painesville, Ohio 44077, for Respondent-Appellant.*

MAHONEY, J.

This is an accelerated calendar case.

On August 25, 1988, appellees, Lake County Board of County Commissioners and Willow Terrace, Limited Partnerships, filed a mandamus action against appellant, Lake County Auditor, Edward H. Zupancic, to compel him to sign his name and affix his seal to $3,135,000 worth of industrial revenue bonds pursuant to R.C. 133.19.

The industrial revenue bonds were to finance the construction of a low to moderate income apartment complex by Willow Terrace Limited Partnerships which is a private, for-profit entity.

The appellant refused to sign and seal the bonds, claiming that their issuance was unconstitutional.

Both parties filed summary judgment motions; and on March 9, 1989, the trial court granted appellees' motion for summary judgment and ordered appellant to sign and seal the bonds. The judgment has been stayed by agreement of all the parties.

Appellant has filed a timely appeal with the following assignment of error:

"THE TRIAL COURT'S RULING THAT THE INDUSTRIAL REVENUE BONDS ARE FOR A CONSTITUTIONALLY PERMISSIBLE USE IS CONTRARY TO LAW."

Essentially, appellant argues that the issuance of the bonds for the acquisition and construction of a low to moderate income apartment complex is not a permissible purpose under Section 6, Article VIII, and Section 13, Article VIII, of the Ohio Constitution.

Section 6, Article VIII, provides in part:

"* * * No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association: * * *."

Section 13, Article VIII, provides for certain exceptions to the limitations and prohibitions of Section 6. Section 13 states, in pertinent part:

"* * * *To create or preserve jobs and employment opportunities, to improve the economic welfare of the people of the state, to control air, water, and thermal pollution, or to dispose of solid waste*, it is hereby determined to be in the public interest and a proper public purpose for the state or its political subdivisions, taxing districts, or public authorities, its or their agencies or instrumentalities, or corporations not for profit designated by any of them as such agencies of instrumentalities, to acquire, construct, enlarge, improve, or equip, and to sell, lease, exchange, or otherwise dispose of property, structures, equipment, and facilities with in the State of Ohio *for industry, commerce, distribution, and research*, to make or guarantee loans and to borrow money and issue bonds or other obligations to provide moneys for the acquisition, construction, enlargement, improvement, or equipment, or such property, structures, equipment and facilities. * * *" (Emphasis added.)

Section 13, Article VIII, authorizes the state and its governmental subdivisions to make loans and issue bonds to finance projects for "industry, commerce, distribution, and research." Thus, the issue before this court is whether construction of a low to moderate income apartment complex falls within this definition.

The Ohio Supreme Court addressed this issue in *State, ex rel. Brown*, v. *Beard* (1976), 48 Ohio St. 2d 290. The court held that issuance of revenue bonds for construction and rehabilitation of low and moderate income housing was prohibited by Section 4, Article VIII, of the Ohio Consti-

tution. The court rejected the argument that moderate and low cost housing was related to industry or commerce or the other specific purposes enumerated in Section 13.

Appellant argues that *Beard* has not been overruled and is still the law in Ohio. Appellant correctly points out that the Ohio Attorney General has not reversed *Beard sub silentio*. 1988 Atty. Gen. Ops. No. 88-037. In that opinion the attorney general stated that "[t]here is no doubt that *Beard* imposes limits upon the city's authority to use" a separate agency "as a vehicle to assist in financing the proposed housing units." The opinion further stated that the question presented for his opinion and the *Beard* decision are "factually distinguishable."

Appellant further argues that the issue of low cost housing has been addressed by the legislature in Section 14, Article VIII, which allows the state to issue bonds for multi-unit dwellings used and occupied exclusively by persons sixty-two years of age and older and for owner-occupied single family homes. Appellant argues that the legislative history, proposed amendments, and the final enactment of Section 14 clearly show that the intent of the people was to authorize the use of the state's credit for multiple unit rental housing only if the housing was used by persons sixty-two years old or older.

Appellees argue that it is evident that the more than ten year old *Beard* decision was erroneously decided and has been reversed by the Ohio Supreme Court *sub silentio*.

Appellees cite *State, ex rel. Bd. of Preble Cty. Commrs.*, v. *Mong* (1984), 12 Ohio St. 3d 66, and *Roosevelt Properties Co.* v. *Kinney* (1984), 12 Ohio St. 3d 7, in support of their argument that *Beard* has been undercut and overruled by implication.

Appellees' arguments are not convincing. In *Mong, supra,* the court held that farming fell within the Section 13 definition of "commerce" and "industry" and stated that the inclusion of farming fosters the purpose of that provision to "improve the economic welfare of the people of the state." The court also stated that farming fit within the general definition of "commerce," buying and selling of goods, and "industry," the commercial production of goods.

Appellees maintain that the *Roosevelt* case demonstrates that multiunit housing is commerce because the court stated that the owner's use of a multiunit apartment complex was "singularly commercial in nature."

This argument is not persuasive and is distinguishable from the case *sub judice.*

The *Roosevelt* case concerned the tax reduction factor and the property owners' tax liability, authorized under Section 2a, Article XII, of the Ohio Constitution. In the case *sub judice,* the question before the court was the determination of the applicability of Section 6, Article VIII, and Section 13, Article VIII, of the Ohio Constitution as to the issuance of bonds for the acquisition and construction of a low to moderate income apartment complex.

In *Roosevelt, supra,* the court stated that the properties, with which they were concerned in that case, "are accompanied by commercial expectations" and are "singularly commercial in nature." In using the term "commercial," the court was referring to the fact that the multiunit apartment complex involved therein was "primarily for income producing purpose." This decision, therefore, does not declare that multiunit housing is commerce as provided in Section 13, Article VIII, of the Ohio Constitution and is clearly distinguishable from the case *sub judice.*

Appellees further argue that providing low to moderate cost housing is in the public interest and would improve the "economic welfare of the people, "which is one of the purposes set forth in Section 13.

However, a similar argument was rejected by the court in *Beard* where the court stated that the purpose of improving the economic welfare was prefatory and had to be evaluated in light of the specific purposes of "industry, commerce, distribution and research."

Furthermore:
"* * *

"The determination of whether the authorization of such bonds should be made in the public interest is essentially a political question, properly decided by the legislative and executive branches of government, not the judiciary. The purpose of judicial review is to determine whether the legislative and executive branches of government, in their action, were manifestly arbitrary or unreasonable. *State, ex rel. Taft,* v. *Campanella* (1977), 50 Ohio St. 242 [4 0.0 3d 423]. * * *" *Stark County* v. *Ferguson* (1981), 2 Ohio App. 3d 72.

The *Beard* case is on point, has not been reversed, and is good precedent.

For the foregoing reasons, the judgment of the trial court and order compelling appellant to sign and seal the bond is hereby reversed; and judgment is entered in favor of the appellant.

*Judgment reversed.*

CHRISTLEY, P.J., and FORD, J., concur.