Saultz et al., Appellants, *v.* Funk, Appellee.

(No. 38328—Decided May 24, 1979.)

*Mr. Ellis B. Brannon* and *Mr. William J. Novak,* for appellants.

*Rhoa, Follen & Coyne Co., L.P.A.,* and *Mr. William J. Coyne,* for appellee.

Krenzler, P. J. This case involves the question of the timeliness of the filing of an action for medical malpractice.

On July 27, 1976, the plaintiffs-appellants, Catherine and Ralph P. Saultz, husband and wife, filed a complaint in the Cuyahoga County Common Pleas Court against the defendant-appellee, Paul O. Funk, M.D., hereinafter referred to as appellee, arising out of a tubal ligation alleged to have been negligently performed by the appellee upon Mrs. Saultz. In their complaint the appellants stated that Mrs. Saultz entered the hospital on November 14, 1973, and that thereafter the operation was performed. It was further alleged that as a proximate result of the appellee's negligence the ap-

pellants learned in approximately September, 1974* that Mrs. Saultz was pregnant; that the appellants had five other children, and that the purpose of the operation was to prevent further childbirth; that on May 14, 1976, Mrs. Saultz gave birth to a son; that due to appellee's negligence Mrs. Saultz developed an infection and diabetes; and that various expenses had been, and would continue to be, incurred resulting from appellee's negligence. These expenses included medical expenses due to the birth, infection, and diabetes, and expenses for support and maintenance of the child. The appellants demanded judgment in the sum of $150,000 plus interest and costs.

In his answer to the complaint, the appellee entered a general denial to the allegations of negligence, asserted that the complaint failed to state a claim, and also raised the affirmative defense that the complaint was not timely filed and therefore was barred by the statute of limitations. No motion to dismiss was filed by appellee pursuant to Civ. R. 12(B)(6) based upon failure to state a claim upon which relief could be granted.

Interrogatories were filed by both sides, and the appellant-Mrs. Saultz filed her answers to the interrogatories on December 3, 1976. The record does not indicate that the appellee filed answers to the appellants' interrogatories.

On February 16, 1977, the appellee filed a motion for summary judgment, Civ. R. 56, alleging that the case should be dismissed since it had not been timely filed in accordance with R. C. 2305.11. Accompanying the appellee's motion for summary judgment was an affidavit in which he stated: that he had treated Catherine Saultz for a tubal ligation and that she was discharged from the hospital on November 19, 1973; that at that time arrangements were made for Mrs. Saultz to come to the appellee's office for post-operative treatments on December 3 and 10, 1973; that these appointments were not kept; and that the appellee's last contact with Mrs. Saultz was on November 19, 1973, the day she was discharged from the hospital.

---

* This date should properly have read September, 1975. The proper date was supplied by the appellants' response to interrogatories. Also, the appellant stated in an affidavit that the child was conceived on or about August 15, 1975. This date was not contested by the appellee and was relied upon in the lower court's opinion.

The appellants filed a reply brief to the appellee's motion for summary judgment, accompanied by an affidavit by Mrs. Saultz asserting that: in November, 1973, the appellee purported to perform the tubal ligation; that the purpose thereof was to prevent further conception of children; that on or about August 15, 1975, Mrs. Saultz conceived a child; and that the child was born on May 14, 1976.

In a judgment entry and opinion filed July 22, 1977, the trial court granted the appellee's motion for summary judgment and ordered the case dismissed on the ground that the action was not timely filed.

The appellants filed a timely appeal from the judgment entered below and have presented the following assignments of error for our consideration:

"I. Under the principles of *Melnyk* v. *Cleveland Clinic*, a physician whose conduct constituted negligence as a matter of law cannot raise the statute of limitations defense against a patient who sued the physician within one year of discovering the physician's negligence.

"II. In enacting Section 2305.11(B) of the Ohio Revised Code, the legislature adopted a limited discovery rule for determining when a medical malpractice action accrues.

"III. The United States and Ohio Constitutions require the use of a discovery rule to determine the accrual of a cause of action for medical negligence.

"A. Fundamental fairness demands that a patient's right to sue should not be cut off before her cause of action matures.

"B. Equal Protection forbids limiting the discovery rule to foreign object claimants only."

The statute of limitations applicable to medical malpractice claims is set forth in R. C. 2305.11 which provides in pertinent part as follows:

"(A) An action for * * * malpractice, including an action for malpractice against a physician * * * shall be brought within one year after the cause thereof accrued * * *.

" * * *

"(B) In no event shall any medical claim against a physician * * * be brought more than four years after the act or omission constituting the alleged malpractice occurred. * * * "

The rule set forth in subsection (A) that a malpractice action must be brought within one year after it accrues is one of

long standing which has been in effect since 1894. *See* 91 Ohio Laws 299. Much litigation involving this rule has centered around the question of when such an action accrues and when the one year period commences to run. Subsection (B) is a recent amendment to the statute which became effective in 1975. *See* Am. Sub. House Bill 682, 136 Ohio Laws 2809. Appellants' first assignment of error raises the issue of when the one year limitation period contained in subsection (A) began to run on their malpractice claim. Their second assignment of error requires us to determine the correct meaning of subsection (B) and its proper interrelationship with, and effect upon, the rule set forth in subsection (A).

In order to place appellants' assignments of error in proper perspective, we shall first summarize the present Ohio law governing the time within which an action for malpractice must be filed.

For purposes of interpreting subsection (A), there are three principal points in time when a cause of action for malpractice might be said to accrue: (1) on the date when the relationship between the plaintiff-patient and the defendant-physician terminates (the "termination" rule), *see, e.g., Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164; (2) on the date when the act or omission constituting the alleged malpractice is discovered or in the exercise of reasonable diligence should be discovered (the "discovery" rule), *see, e.g., Whitfield* v. *Roth* (1974), 10 Cal. 3d 874, 519 P. 2d 588; Ala. Code §6-5-482; (3) on the date when the act or omission actually occurred. The latter rule, while perhaps the most definite and easiest to administer, is also the most strict. Most courts have developed exceptions to that rule in order to avoid the harsh results often arising in malpractice cases. *See Wyler* v. *Tripi, supra,* at 166.

The termination and discovery rules each have strengths and weaknesses in terms of serving public policy interests in forestalling stale claims, protecting mutual trust in the physician-patient relationship, and preventing a patient from being deprived of a bona fide but as yet undiscovered claim.

Taken alone, neither rule serves to prevent stale claims which may be difficult to defend against long after the occurrence of the act or omission at issue. A patient may either continue his relationship with the doctor for a number of years, during which time the termination rule would postpone com-

mencement of the statutory limitation period, or he may fail to discover his injury for a similarly long period during which the discovery rule would have the same effect.

The termination rule is justified by the rationale that it strengthens the physician-patient relationship. *See Wyler* v. *Tripi, supra.* "The patient may rely upon the doctor's ability until the relationship is terminated and the physician has the opportunity to give full treatment, including the immediate correction of any errors in judgment on his part." *Id.* at 168. In short, the termination rule is designed to avoid forcing a patient to sue his doctor. This rule suffers from the weakness that a patient may be forced to forfeit a valid claim where the physician-patient relationship terminates, and the statutory period expires, before the injury is or reasonably should be discovered. "The termination rule is further fallible in that it requires the patient to determine, at the time the relationship is terminated, that malpractice has taken place, when in fact he may have relied upon the very advice which constitutes malpractice." *Id.* at 168.

Generally, the discovery rule favors the patient by extending commencement of the statutory period until he discovers or should discover the malpractice, thus reducing the possibility that a valid claim will be lost. Where the injury is discovered during a continuing course of treatment, however, to require the patient to sue may be seen as destroying the mutual confidence in the physician-patient relationship. *Ishler* v. *Miller* (1978), 56 Ohio St. 2d 447, 449 (per curiam). "Such a requirement would place the patient in the unacceptable situation of deciding whether to continue the ongoing treatment and thus risk the chance of forfeiting his right to bring suit at a later date, or terminate the relationship, and, perhaps, deny the physician the opportunity of correcting his error." *Id.*

The Ohio Supreme Court has traditionally followed the termination rule in malpractice cases. *See, e.g., Ishler* v. *Miller, supra; Wyler* v. *Tripi, supra; DeLong* v. *Campbell* (1952), 157 Ohio St. 22; *Bowers* v. *Santee* (1919), 99 Ohio St. 361. In *Wyler* v. *Tripi, supra,* the court thoroughly examined the advantages and disadvantages of the termination and discovery rules, and although it acknowledged that "there is much to recommend the adoption of the discovery rule," reluctantly concluded the courts should leave adoption of such a rule to the

legislature. *Id.* at 170-71. This it was noted the legislature had failed to do despite numerous opportunities. *Id.* at 171.

In a 1972 case, where the defendant-surgeon failed to remove a metallic forceps and a nonabsorbent sponge from the plaintiff-patient's body following surgery, the Ohio Supreme Court devised a "foreign object tolling rule." *See Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198. The court expressly declined to disturb its holding in *Wyler* v. *Tripi, supra,* which it noted was not a "foreign object" case, that a cause of action for medical malpractice accrues at the time that the physician-patient relationship terminates. Rather it held that:

"Where a metallic forceps and a nonabsorbent sponge are negligently left inside a patient's body during surgery, the running of the statute of limitation governing a claim therefor is tolled until the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act. (*Wyler* v. *Tripi,* 25 Ohio St. 2d 164, distinguished.)" *Melnyk* v. *Cleveland Clinic, supra* (syllabus).

Thus, in *Melnyk* the Supreme Court devised a special "tolling" rule under what is now R. C. 2305.11(A) whereby the plaintiff's cause of action accrued upon termination, but the one year statutory period did not begin to run until the patient determined, or by reasonable diligence should have determined, that the foreign objects were left in his body during surgery.

In support of its decision the court noted that it was difficult to imagine a defense to the act charged, and that "as problems of proof and defense dwindle, so does the persuasiveness of the 'stale claims' reasoning." *Id.* at 200.

In their first assignment of error appellants contend that the tolling rule devised by the Supreme Court in *Melnyk* extends to all cases involving acts that can be labeled "negligence as a matter of law," and therefore that their action was timely filed under R. C. 2305.11(A). Appellee contends on the other hand that the *Melnyk* rule applies only to cases where foreign objects are left in a patient's body during surgery, and therefore that the one year statute of limitations in the instant case commenced to run upon termination of the physician-patient relationship.

The record shows: that the operation in question took place sometime between November 14 and 19, 1973; that the

physician-patient relationship terminated at the latest on December 10, 1973; that Mrs. Saultz determined that she was pregnant in September, 1975; and that this action was filed on July 27, 1976. Thus, the complaint was filed within one year of determination of appellee's alleged negligence, but not within one year of termination of the physician-patient relationship.

The tolling rule devised in *Melnyk* v. *Cleveland Clinic, supra,* was applied only to the facts present in that case. It does not extend to all cases involving negligence as a matter of law. As we interpret *Melnyk,* the running of the statute of limitations is tolled only in those cases where a foreign object or objects are left in a patient's body following surgery. Other courts which have addressed the question reached a similar conclusion, and refused to apply *Melnyk* to cases where no foreign object was left in a patient's body following surgery. *See Simmons* v. *Riverside Methodist Hospital* (1975), 44 Ohio App. 2d 146; *Woodgeard* v. *Miami Valley Hospital Society* (1975), 47 Ohio Misc. 43.

Based on the allegations contained in the complaint in the instant case, this action involves negligent performance of a tubal ligation and is not a "foreign object" case. Thus the *Melnyk* rule does not apply. For purposes of R. C. 2305.11(A), appellants' cause of action for malpractice accrued, and the one year statutory period began to run, on the date that the physician-patient relationship terminated. Accordingly, appellants' first assignment of error is overruled.

Following the Supreme Court's decision in *Melnyk* v. *Cleveland Clinic, supra,* the General Assembly amended the statute of limitations governing malpractice claims by enacting R. C. 2305.11(B), effective July 28, 1975, which provides in pertinent part:

"*In no event* shall *any* medical claim against a physician * * *be brought more than four years after the act or omission constituting the alleged malpractice occurred. * * *" (Emphasis added.)

In their second assignment of error, appellants contend that by enacting subsection (B) the legislature impliedly adopted a limited discovery rule which applies to all medical malpractice actions and operates within the four year period set forth in subsection (B). Thus, they contend that an action is

timely if filed within one year of discovery, and also no more than four years after the act of malpractice.

Appellee contends on the other hand that subsection (B) does not repeal the existing termination rule in favor of a discovery rule; that it merely operates to cut off stale claims by establishing an outside limit of four years from the act of malpractice within which to file a claim; and that subsection (B) would be pertinent in the instant case only if the physician-patient relationship terminated more than three years after the act of malpractice, and that in such a case subsection (B) would serve to shorten, not extend, the period for filing a claim.

Thus, as a matter of statutory construction we must determine the correct meaning of subsection (B), as well as its proper interrelationship with subsection (A).

Upon an examination of R. C. 2305.11(B) we find that its terms are clear and unambiguous. The statute provides that in no event shall any medical claim be brought more than four years after the act or omission constituting the alleged malpractice occurred. The statute does not mention a limited discovery rule, nor does it indicate a legislative intent to adopt such a rule. Moreover, subsection (B) does not indicate that the legislature intended to overrule altogether the termination and tolling rules previously adopted by the Supreme Court. Rather the legislature limited the period during which the termination and tolling rules may extend the period for bringing a claim under subsection (A).

Prior to passage of subsection (B), the Supreme Court determined that a cause of action for medical malpractice accrued, and the one year statute of limitations began to run, only upon termination of the physician-patient relationship. *Wyler* v. *Tripi, supra.* In cases involving foreign objects, the cause of action still accrued at termination, but in such cases the statute of limitations was tolled following termination until the plaintiff determined that a foreign object had been left in his body during surgery. *Melnyk* v. *Cleveland Clinic, supra.* Under these decisions, a patient who either continued his treatment relationship with his doctor, or failed to determine that a foreign object was present, could bring an action many years after the occurrence of the act or omission of negligence upon which his claim was based. Thus former R. C. 2305.11, as

interpreted, did not always prevent the prosecution of stale claims. By enacting subsection (B), the legislature limited the termination and tolling rules to the extent that they previously would have allowed a claim to be filed more than four years after the act or omission alleged to constitute malpractice. The legislature did not otherwise overrule the termination and tolling rules, except to the extent that they conflict with the four year limitation in subsection (B).

Thus in order to satisfy subsection (A) one must still file a claim within one year of termination, unless *Melnyk* applies, in which case the one year statutory period is tolled following termination until the patient determines, or reasonably should determine, that a foreign object has been left in his body during surgery. Subsection (B) adds the requirement that "*in no event* shall *any* medical claim***be brought more than four years after the act or omission constituting the alleged malpractice occurred." R. C. 2305.11(B). (Emphasis added.)

This means that if in a "foreign object" case the physician-patient relationship is terminated as early as the date of the act or omission, the running of the one year statute of limitations under R. C. 2305.11(A) is tolled until the patient determines, or reasonably should determine, that a foreign object was left in his body, but in no event, under R. C. 2305.11(B), may the action be brought more than four years after the act or omission.

In cases not involving foreign objects there are at least three other situations in which it is necessary to determine the proper interrelationship of subsections (A) and (B). These situations and the proper results may be illustrated as follows:

1. The physician-patient relationship terminates and a year passes subsequent to termination, while the four year period set forth in subsection (B) has still not yet expired. Here subsection (A) controls and the action must be brought within a year of termination regardless of when the four year period expires.

2. The physician-patient relationship continues for more than four years after the act or omission alleged to constitute malpractice occurred. Here, subsection (B) controls and the action must be brought within four years of the date of the act or omission regardless of when the relationship terminates.

3. The physician-patient relationship terminates within four years of the act or omission, but the one year period after termination extends beyond the four year period after the act or omission. Again, subsection (B) controls and the action must be brought within four years of the date on which the act or omission occurred, rather than within the one year period following termination.

Upon first examination, application of the four year limit in the latter two examples may appear to be inconsistent with the underlying rationale of the termination rule which is to avoid forcing a patient to sue his treating physician. In reality, however, this is not the case. In effect, the four year limitation forces termination within a four year period since in all but the highly unusual case the patient will cease consulting the physician before or at the time when he must bring suit. Thus by the time the action commences the patient will have terminated his relationship with the doctor.

We have previously determined that the instant case is not governed by the *Melnyk* rule, and the record demonstrates that the physician-patient relationship terminated and one year passed prior to expiration of the four year limit set forth in subsection (B). Therefore this case falls within the first example given above, and appellant was required to file her action within one year after termination. The record shows that the physician-patient relationship terminated at the latest on December 10, 1973, and thus appellant was required to file her claim within a year from that date. Since her claim was not filed until July 27, 1976, it was barred by R. C. 2305.11(A).

We realize that the statute as presently written operates in a harsh manner and may often serve to cut off a valid claim before a patient has discovered or reasonably could discover that a cause of action exists. We are unable to see, however, how subsection (B) may be interpreted as adopting a discovery rule and thereby as adding an extra dimension to the time when this action accrued for purposes of subsection (A). To the contrary, subsection (B) limits the existing termination and *Melnyk* rules by shortening the previous statutory period in those cases where the physician-patient relationship terminates, or the patient determines the presence of a foreign object, more than three years after the act of malpractice.

Accordingly, appellants' second assignment of error is overruled.

In their third assignment of error, appellants contend that application of the statute of limitations to bar their claim violates due process of law and denies them equal protection of the laws contrary to the Fourteenth Amendment of the United States Constitution, and also contrary to Section 16, Article I of the Ohio Constitution which is equivalent to the due process clause. *See Barnhardt* v. *Linzell* (1957), 104 Ohio App. 243.

Appellants first argue that due process requires a discovery rule. This is incorrect. Due process does not require that a statute of limitations governing malpractice claims be extended until the injury is discovered or should be discovered. *Clark* v. *Gulesian* (C.A. 1, 1970), 429 F.2d 405, *certiorari denied* (1971), 400 U.S. 993; *Owen* v. *Wilson* (1976), 260 Ark. 21, 537 S.W. 2d 543; *Laughlin* v. *Forgrave* (Mo. 1968), 432 S.W. 2d 308 (en banc).

Appellants also argue that application of the termination rule in the instant case violates equal protection, since in foreign object cases the *Melnyk* "tolling" rule is applied. This is also incorrect. Ohio has one general rule which is applied in malpractice cases, and that is the termination rule. The running of the statute is tolled only where a foreign object is left in a patient's body during surgery. *See Melnyk* v. *Cleveland Clinic, supra.* The application of a different statute of limitations or a different date on which the statute commences to run in a particular class of actions does not violate equal protection so long as the classifications are reasonable, not discriminatory, and apply to and affect alike all persons and actions within the class. *Laughlin* v. *Forgrave, supra.* The distinction between foreign object cases and other medical malpractice claims is neither unreasonable nor arbitrary, and appellants are treated equally with all other plaintiffs bringing malpractice claims in cases not involving foreign objects. Accordingly, they are not denied equal protection of the laws. Appellants' third assignment of error is therefore without merit and is overruled.

In summary, appellants' cause of action for malpractice accrued at the latest on December 10, 1973, when Mrs. Saultz failed to keep her final appointment with appellee and the physician-patient relationship terminated. *See Wyler* v. *Tripi,*

*supra.* Appellants were required to bring this action within one year of that date. R. C. 2305.11(A). Since they did not file the instant action until July 27, 1976, more than two and one-half years later, the action was not timely. Hence the trial court properly granted the appellee's motion for summary judgment.

*Judgment affirmed.*

JACKSON and CORRIGAN, JJ., concur.