**HARTFORD FIRE INSURANCE CO.,**
Plaintiff-Appellant, Cross-Appellee,

v.

**LAWRENCE, DYKES, GOODENBER-GER, BOWER & CLANCY,**
Defendant, Cross-Appellee,

Gensert Bretnall Bobel, Inc., A.A. Knoch & Sons, Inc., Defendants-Appellees, Cross-Appellees,

Schneider Lumber Co., Third-Party Plaintiff, Defendant, Cross-Appellant.

Nos. 82–3404, 82–3419.

United States Court of Appeals, Sixth Circuit.

Argued March 29, 1984.

Decided July 31, 1984.

Marvin L. Karp (argued), Bruce D. Cele-brezze, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for plaintiff-appellant, cross-appellee.

Fredric E. Kramer, Cleveland, Ohio, Robert F. Hesser, Cleveland, Ohio, Thomas L. McDonald, Jr., Cleveland, Ohio, for defendants-appellees, cross-appellees.

Thomas P. Curran, John J. Horrigan, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for third-party plaintiff, defendant, cross-appellant.

Frank Bolmeyer, Gallagher, Sharp, Fulton & Norman, James G. Gowan, (Lead Counsel) Joseph W. Pappalardo (argued) Cleveland, Ohio, for defendant, cross-appellee.

Before: KENNEDY and JONES, Circuit Judges, and CHURCHILL, District Judge.[*]

CORNELIA G. KENNEDY, Circuit Judge.

Appellant challenges the constitutionality of Ohio's "no-action" statute for designers and builders of improvements to property, Ohio Rev.Code § 2305.131, and its application to damages suffered by the improvement itself. We affirm the holdings of the court below that the statute applies to the facts of this case and that the statute is constitutional.

The facts before us are not in dispute. The Hartford Fire Insurance Co. (Hartford) is the subrogated insurer of the Canton Country Day School. As such, Hartford is seeking compensation for the damages caused when the trusses in the roof of the school's gymnasium collapsed, in September 1979. On December 30, 1980, Hartford brought this action, naming as defendants Gensert Bretnall Bobel, Inc., the structural engineer for the design and construction of the school building; A.A. Knoch & Sons, Inc., the general contractor who installed the trusses, and Schneider Lumber Co., the manufacturer and seller of the trusses. Schneider Lumber Co. then filed a third-party complaint against the architects who designed the trusses, Lawrence, Dykes, Goodenberger, Bower & Clancy (Lawrence, Dykes).

All four defendants filed motions for summary judgment. The defendants had completed their services with regard to the roof trusses by September 1969, more than ten years before their collapse. Accordingly, they argue, Ohio law bars claims against them. Ohio Rev.Code § 2305.131 states:

> No action to recover damages for any injury to property, real or personal, or

* Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation.

for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction. This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

Hartford opposed the motions on the grounds that, first, section 2305.131 did not apply to actions seeking damages for defects in the improvement itself; and, second, the statute is unconstitutional. Hartford also argued that the statute did not apply to Schneider Lumber Co., which acted as a materialman in manufacturing and selling the trusses. The District Court granted the motions for summary judgment against Hartford filed by Gensert Bretnall Bobel, Inc. and A.A. Knoch & Sons, Inc., but denied the motion by Schneider Lumber Co. The court also granted the motion for summary judgment filed by Lawrence, Dykes against Schneider Lumber Co. Hartford appealed the grant of summary judgment to this Court. Schneider Lumber Co. later cross-appealed.

### I.

Hartford contends that section 2305.131 bars only claims for consequential damages, not actions for damages to the defective improvement itself. To support this argument, Hartford points out that section 2305.131, by its terms, applies to "damages for any injury to property, real or personal, ... arising out of the defective and unsafe condition of an improvement to real proper-

ty." In contrast, a model statute proposed by the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors would expressly bar actions to recover damages "for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property," as well as for resulting injuries to property or person. *See* Comment, *Limitation of Action Statutes for Architects and Builders-Blueprints for Non-action,* 18 Cath.U.L.Rev. 361, 365 n. 31 (1969). Since the model statute was in circulation at least prior to the amendment of section 2305.131 in 1971, Hartford finds it significant that no language in the Ohio statute specifically includes defects in the improvement and suggests that the statute thus impliedly does not cover damages for deficiencies in an improvement itself.

Failure to include language like that used in the model statute has been held in Colorado to limit the scope of its statute, similar to section 2305.131, to consequential damages, and not to include damages to the defective improvements themselves. *See Cudahy Co. v. Ragnar Benson, Inc.,* 514 F.Supp. 1212 (D.Colo.1981); *Tamblyn v. Mickey and Fox, Inc.,* 195 Colo. 354, 578 P.2d 641 (1978); *Duncan v. Schuster-Graham Homes, Inc.,* 194 Colo. 441, 578 P.2d 637 (1978). The Colorado Supreme Court found that the statute's reference to "injury to person or property" preserved the traditional distinction in tort law between defects in a structure and consequential damages arising from those defects, and concluded that "this special statute of limitations does not apply to claims for damages for deficiencies in a structure itself, i.e., where the plaintiff seeks only to receive what the builder promised to deliver, or damages to compensate him for deficiencies in the final product." *Duncan,* 578 P.2d at 640.

Although many states in addition to Colorado have statutes similar to section 2305.131,[1] no other state has adopted or rejected Colorado's interpretation of the

---

1. A 1979 law review article stated that 44 jurisdictions had enacted legislation providing spe-

scope of its statute.[2] Apparently, no Ohio court has defined the scope of the damage actions barred by section 2305.131. A federal court sitting in diversity is bound to apply the substantive law of the forum state; if the state's highest court has not spoken to the question in controversy, the federal court must discern how the state courts would respond if confronted with the question. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir. 1981).

Under Ohio law,

[i]t is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent.... If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly.

*Provident Bank v. Wood,* 36 Ohio St.2d 101, 105–06, 304 N.E.2d 378 (1973). Courts are directed to give effect to the words of a statute, and not to modify an unambiguous statute by deleting words used or inserting words not used. *Bernardini v. Board of Education,* 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979); *see Gulf Oil Corp. v. Kosydar,* 44 Ohio St.2d 208, 215–16, 339 N.E.2d 820 (1975).

Section 2305.131 states that, ten years after the completion of an improvement, "[n]o action to recover damages for any injury to property, real or personal" may be brought. This broad language unambiguously includes all types of damages. Under Ohio's rules of interpretation, this Court must apply the "clear, unequivocal and definite" meaning of the statute as barring suits for all types of damages, rather than create a limitation on the statute by considering more explicit language that could have been included but was not. Accordingly, we affirm the District Court's holding that section 2305.131 applies to bar actions for damages for defects in the improvement itself as well as consequential damages.

**II.**

Hartford also contends that section 2305.131 should not be applied in this case because it violates the United States and Ohio Constitutions. Although Ohio courts have not confronted this issue, statutes similar to section 2305.131 have been challenged on federal and state constitutional grounds in many jurisdictions. A majority of courts have upheld the statutes,[3] but a sizable minority have struck them down.[4]

cial time limitations for design and construction claims. *See* Knapp & Lee, *Application of Special Statutes of Limitations Concerning Design and Construction,* 23 St. Louis U.L.J. 351, 351–52 (1979). Some of these statutes, however, have been held unconstitutional by state courts. See note 4 *infra.*

**2.** Minnesota, reasoning that the history and language of its similar statute show a concern with the expansion of tort liability, has limited the application of the statute to barring actions in tort brought by third parties not in privity with the party asserting the bar. *Kittson County v. Wells, Denbrook & Assocs., Inc.,* 308 Minn. 237, 241 N.W.2d 799 (1976). Two jurisdictions have rejected an argument that such statutes should not be held to bar suits brought by the owner of the improvement. *See Salesian Soc'y v. Formigli Corp.,* 120 N.J.Super. 493, 295 A.2d 19 (Law Div.1972), *aff'd,* 124 N.J.Super. 270, 306 A.2d 466 (App.Div.1973); *Good v. Christensen,* 527 P.2d 223 (Utah 1974).

Both these theories, while not based on the reasoning of the Colorado courts would have permitted most suits for damages for deficien-

cies in the improvement (as contract claims brought by the owner of the property) while barring consequential damages.

**3.** *See, e.g., Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970), *appeal dismissed,* 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); *Barnhouse v. City of Pinole,* 133 Cal.App.3d 171, 183 Cal.Rptr. 881 (1982); *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822 (Colo.1982); *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.,* 462 A.2d 416 (Del.Super.Ct.1983); *Mullis v. Southern Co. Servs., Inc.,* 250 Ga. 90, 296 S.E.2d 579 (1982); *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); *Beecher v. White,* 447 N.E.2d 622 (Ind.App. 1983); *Carney v. Moody,* 646 S.W.2d 40 (Ky. 1982); *Burmaster v. Gravity Drainage Dist. No. 2,* 366 So.2d 1381 (La.1978); *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514 (1982); *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980); *Anderson v. Fred Wagner and Roy Anderson, Jr., Inc.,* 402 So.2d 320 (Miss.1981); *Reeves v. Ille Elec. Co.,* 170 Mont. 104, 551 P.2d 647 (1976); *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *Howell v.*

 As a starting point for considering the constitutionality of Section 2305.-131, we note a few general factors favoring upholding the statute. First, state legislatures are presumed by federal courts to have acted constitutionally in making laws. *See McDonald v. Board of Election Commissioners*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969); *Wilson v. Robinson*, 668 F.2d 380, 383 (8th Cir. 1981); *Alabama State Federation of Teachers v. James*, 656 F.2d 193, 195 (5th Cir.1981). Similarly, acts of the General Assembly are presumed valid under Ohio law, and in cases of doubt should be held constitutional. *See State v. Dorso*, 4 Ohio St.3d 60, 446 N.E.2d 449, 450 (1983); *Peebles v. Clement*, 63 Ohio St.2d 314, 321, 408 N.E.2d 689 (1980); *State ex rel. Taft v. Campanella*, 50 Ohio St.2d 242, 246, 364 N.E.2d 21 (1977).

Moreover, the United States Supreme Court has offered some indication that it does not perceive any violation of the United States Constitution under these stat-

*Burk*, 90 N.M. 688, 568 P.2d 214 (Ct.App.), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977); *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983); *Josephs v. Burns*, 260 Ore. 493, 491 P.2d 203 (1971); *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978); *McMacken v. State*, 320 N.W.2d 131, *aff'd on rehearing*, 325 N.W.2d 60 (S.D.1982); *Harmon v. Angus R. Jessup Assocs., Inc.*, 619 S.W.2d 522 (Tenn.1981); *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex.Civ.App.1981), *appeal dismissed*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982); *Good v. Christensen*, 527 P.2d 223 (Utah 1974); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wash.2d 528, 503 P.2d 108 (1972).

4. *See, e.g., Jackson v. Mannesmann Demag Corp.*, 435 So.2d 725 (Ala.1983); *Overland Const. Co. v. Sirmons*, 369 So.2d 572 (Fla.1979); *Shibuya v. Architects Hawaii Ltd.*, 65 Haw. 26, 647 P.2d 276 (1982); *State Farm Fire and Casualty Co. v. All Elec., Inc.*, Nev., 660 P.2d 995 (1983); *Henderson Clay Prods. Inc. v. Edgar Wood & Assocs., Inc.*, 122 N.H. 800, 451 A.2d 174 (1982); *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okla.1977); *Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo. 1980).

utes. Appeals from a state court decision that such statutes were constitutional have twice been dismissed by the Supreme Court on the grounds that no substantial federal question was presented. *See Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918 (1970), *appeal dismissed*, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex. Civ.App.1981), *appeal dismissed*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982). The Supreme Court has emphasized that by dismissing for lack of a substantial federal question, it is deciding a case on the merits. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).[5] Accordingly, three state courts have noted these dismissals as some authority that these statutes do not present federal constitutional problems. *See Shibuya v. Architects Hawaii Limited*, 65 Haw. 26, 647 P.2d 276, 288 n. 15 (1982); *State Farm Fire and Casualty Co. v. All Electric, Inc.*, Nev., 660 P.2d 995, 998 n. 2 (1983); *Harmon v. Angus R. Jessup Associates, Inc.*, 619 S.W.2d 522, 524 (Tenn.1981).

In Illinois the original statute was found unconstitutional in *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588 (1967); after the statute was amended, an intermediate appellate court upheld it as constitutional under the facts of the case, *Matayka v. Melia*, 119 Ill.App.3d 221, 74 Ill.Dec. 851, 456 N.E.2d 353 (1983). Similarly, in Minnesota, the statute was amended after being struck down as unconstitutional, *see Pacific Indem. Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977), and subsequently held constitutional under the particular facts of the case, *Calder v. City of Crystal*, 318 N.W.2d 838 (Minn. 1982). The Wisconsin Supreme Court held its original statute unconstitutional, *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 225 N.W.2d 454 (1975); the amended statute has been upheld by a court of appeals, *United States Fire Ins. Co. v. E.D. Wesley Co.*, 100 Wis.2d 59, 301 N.W.2d 271 (Wis.Ct.App.1980), *modified on appeal*, 105 Wis.2d 305, 313 N.W.2d 833 (1982) (Supreme Court did not reach constitutional issue).

5. Justice Brennan has cautioned that summary dispositions like dismissals for lack of a substantial federal question should be accorded "appropriate, but not necessarily conclusive weight." *Mandel v. Bradley*, 432 U.S. 173, 180, 97 S.Ct. 2238, 2242, 53 L.Ed.2d 199 (1977) (Brennan, J., concurring).

## A.

Hartford contends that section 2305.131 violates section 16, Article I of the Ohio Constitution, which states:

All courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law and shall have justice administered without denial or delay.

Section 16 of the Ohio Constitution has been described as "equivalent to the due process clause of the fourteenth amendment." *Saultz v. Funk*, 64 Ohio App.2d 29, 39, 410 N.E.2d 1275 (1979); *Barnhardt v. Linzell*, 104 Ohio App. 243, 148 N.E.2d 242 (1957).[6] We conclude that the Ohio courts would hold section 2305.131 constitutional under its "open court" provision.

Section 2305.131 does not violate the due process protection of the fourteenth amendment. We first note that although the title of section 2305.131 indicates that it is a statute of "Limitation of actions against architects and engineers," this is not a conventional statute of limitations. For ten years after performance or furnishing of services, section 2305.131 acts as a statute of limitation, defining the time in which a suit must be brought after a cause of action accrues. After ten years, however, the statute's function changes, as it prohibits any cause from accruing:[7]

[The statute] does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovering.

The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria* —a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy.

*Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662, 667 (1972) (emphasis in original). In preventing a cognizable claim from accruing in this case, section 2305.131 acts as a statute of repose, not limitation. *See O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 15, 299 N.W.2d 336 (1980).

Legislatures do not violate federal due process rights by creating statutes of repose that prevent causes of action from accruing. A litigant has no vested property right in a cause of action until it accrues. The United States Supreme Court has held that due process does not prohibit the abolition of causes of action:

Our cases have clearly established that "[a] person has no property, no vested interest, in any rule of the common law." *Second Employers' Liability Cases*, 223 U.S. 1, 50 [32 S.Ct. 169, 175, 56 L.Ed. 327] (1912), quoting *Munn v. Illinois*, 94 U.S. 113, 134 [4 Otto 113, 134, 24 L.Ed. 77] (1877). The "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object," *Silver v. Silver*, 280 U.S. 117, 122 [50 S.Ct. 57, 58, 74 L.Ed. 221] (1929), despite the fact that "otherwise settled expectations" may be upset thereby. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 [96 S.Ct. 2882, 2893, 49 L.Ed.2d 752] (1976). See also *Arizo-*

---

**6.** Other states have held that the "open court" provision in their state constitution, either alone or in combination with other state constitutional provisions, is analogous to the due process clause of the United States Constitution. *See, e.g., Cheswold Volunteer Fire Co. v. Lambertson Constr. Co.*, 462 A.2d 416, 422 n. 9 (Del.1983); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514, 519 n. 6 (1982).

**7.** Idaho's statute setting time limits on suits against designers and builders expresses this function more clearly; it defines the time period within which such actions are deemed to

have accrued so that the statute of limitations begins to run. *See Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341, 345 (1982).

Because Ohio's statute is not defined in terms of accrual and does not include a savings clause allowing additional time for a cause of action that arises near the conclusion of the statutory period, its application may bar an accrued cause of action in an unreasonably brief time. The facts before us do not present such a situation, and we do not decide whether such an application would violate due process or the "open court" provision.

*na Employers' Liability Cases*, 250 U.S. 400, 419–422 [39 S.Ct. 553, 555–556, 63 L.Ed. 1058] (1919). Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts.

*Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978), *quoted in Mathis v. Eli Lilly and Co.*, 719 F.2d 134, 138 (6th Cir.1983). In *Mathis*, the Sixth Circuit, citing *Rosenberg*, concluded that Tennessee's ten-year statute of repose for product liability does not violate due process:

> In tort claims, there is no cause of action and therefore no vested property right in the claimant upon which to base a due process challenge until injury actually occurs. An injury in the nature of a tort which occurs after a specified limitation period ... does not give rise to due process protection.

719 F.2d at 141. Thus, Ohio's legislature did not violate the due process clause by abolishing causes of action arising out of defects in an improvement to real property after ten years, if the goal was "a permissible legislative object."

■ Section 2305.131 does rationally further a legitimate state objective. The legislative history of section 2305.131 is scant and provides no guidance about the purposes sought to be served by the legislation.[8] Legislative history is available, however, for the similar statutes passed in many jurisdictions about the same time as Ohio's statute. *See generally* Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action*, 18 Cath.U.L.Rev. 361 (1969); Annot., 93 A.L.R.3d 1242, 1245–49 (1979). The statutes arose in response to changes in state law extending the liability of a designer or builder after completion of the building and acceptance by the owner, to

third parties with whom there is no contractual relationship. *See Yarbro v. Hilton Hotels Corp.*, Colo., 655 P.2d 822, 825 (1983); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514, 519–20 (1982). Given this expanded group of potential claimants and the lengthy anticipated useful life of an improvement to real property, designers and builders were confronted with the threat of defending claims when evidence was no longer available. These statutes attempt to mitigate this situation by limiting the duration of liability and the attendant risks of stale litigation, a public purpose recognized as permissible under due process analysis. *See, e.g., Yarbro*, 655 P.2d at 825; *Cheswold Volunteer Fire Co. v. Lambertson Construction Co.*, 462 A.2d 416, 424 (Del.1983); *Klein*, 437 N.E.2d at 520.

Moreover, the provision in section 2305.-131 allowing suits to be brought for ten years following the completion of services is a reasonable means of pursuing the objective of limiting the duration of liability. In 1967, testimony before a committee of the House of Representatives studying a similar statute for the District of Columbia revealed that, in one study, 99.6% of all claims against architects were brought within ten years after the building was completed. Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action, supra* at 366–67. Courts have found no due process violation in statutes affording periods as brief as four years for a claim to accrue. *See Harmon v. Angus R. Jessup Associates, Inc.*, 619 S.W.2d 522 (Tenn.1981) (upholding Tenn.Code Ann. § 28–3–202 (1980)). The Michigan Supreme Court upheld its six-year statute of repose by stating:

> By enacting a statute which grants architects and engineers complete repose after six years rather than abrogating

---

**8.** There is no Ohio legislative history for the original enactment in 1963. According to a legislative summary, the statute was amended in 1971 "[t]o expand protection of the limitation now afforded only to architects and engineers to all persons who provide services in connection with the design and construction of a build-

ing." Summary of 1971 Legislation 25, Ohio Legis.Com.Reps., Summary of Legislation 108th and 109th Gen.Assem. 1969–72. *See Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, No. C80–2389, slip op. at 5 n. 5 (N.D.Ohio Nov. 3, 1981).

the described causes of action *in toto*, the Legislature struck what it perceived to be a balance between eliminating altogether the tort liability of these professions and placing no restriction other than general statutes of limitations upon the ability of injured plaintiffs to bring tort actions against architects and engineers. The Legislature could reasonably have concluded that allowing suits against architects and engineers to be maintained within six years from the time of occupancy, use, or acceptance of an improvement would allow sufficient time for most meritorious claims to accrue and would permit suit against those guilty of the most serious lapses in their professional endeavors.

*O'Brien*, 410 Mich. at 16, 299 N.W.2d 336. We believe that Ohio courts, if asked to determine whether section 2305.131 violates due process, would agree with the Michigan Supreme Court in finding the statute a reasonable means of pursuing a legitimate state object, and would find no due process violation.

■ Courts in some other states have found that the "open court" provisions in their state constitutions offer other protection in addition to due process rights. Two jurisdictions have interpreted their "open court" provisions as preventing the legislature from abolishing a preexisting cause of action without providing an alternative, unless compelling necessity is shown. Under this reasoning, statutes like section 2305.131 have been struck down. *See Overland Construction Co. v. Sirmons*, 369 So.2d 572 (Fla.1979); *Saylor v. Hall*, 497 S.W.2d

218 (Ky.1973).[9] These decisions, however, rest specifically on distinctive state grounds; for example, the *Overland* court emphasized that its "open court" provision "derives its scope and meaning solely from Florida case law." 369 So.2d at 573.[10]

In contrast, many jurisdictions with similar "open court" provisions have held that statutes like section 2305.131 do not violate such provisions. *See, e.g., Twin Falls Clinic & Hospital Building Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341, 346 (1982); *Beecher v. White*, 447 N.E.2d 622, 628 (Ind.App.1983); *Burmaster v. Gravity Drainage District No. 2*, 366 So.2d 1381, 1387–88 (La.1978); *Anderson v. Wagner and Roy Anderson, Jr., Inc.*, 402 So.2d 320 (Miss.1981); *McMacken v. State*, 320 N.W.2d 131, 136–38, *aff'd on rehearing*, 325 N.W.2d 60 (S.D.1982).[11] Courts have reasoned that the admonition contained in an "open court" provision is directed to the actions of the courts, not the legislature. *See Reeves v. Ille Electric Co.*, 170 Mont. 104, 551 P.2d 647, 650 (1976); *Harmon*, 619 S.W.2d at 524. In response to a challenge to its statute under its "open court" provision, the Pennsylvania Supreme Court reasoned:

This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain nonconstitutional decisions of courts above

**9.** *Saylor v. Hall* held unconstitutional Kentucky's statute of repose for builders and designers because it abolished a cause of action that existed when the statute was passed. This holding was reversed in *Carney v. Moody*, 646 S.W.2d 40 (Ky.1982), which did not repudiate *Saylor's* interpretation of its "open court" provision, but found that to be unconstitutional the cause of action abolished by the statute must have existed when the state constitution was adopted in 1891.

**10.** Two other courts have struck down similar statutes as violative of their "open court" provision in addition to other state constitutional grounds. *See Kallas Millwork Corp. v. Square D*

Co., 66 Wis.2d 382, 225 N.W.2d 454 (1975) (denial of equal protection; explicitly does not rest on violation of "open court" provision); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo.1980) (violation of provisions regarding special law, uniform application of laws and "open court").

**11.** The North Carolina Supreme Court upheld its statute of repose for designers and builders while expressly refusing to decide whether, under its "open court" provision, the legislature could abolish altogether a common law cause of action, since the statute permitted claims to be brought within six years. *See Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868, 882 (1983).

all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law. *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715, 721 (1978). Thus, many courts have concluded that the "open court" provision in their state constitutions are not violated by statutes that, like Ohio's section 2305.131, may abolish a cause of action before it accrues.

The Ohio courts have never held that the "open court" provision in its constitution prevents the legislature from abolishing a cause of action. In *Lafferty v. Shinn*, 38 Ohio St. 46, 48 (1882), the Ohio Supreme Court stated that, under the provision, "it is not within the power of the legislature to abridge the period within which an existing right may be so asserted as that there shall not remain a reasonable time within which an action may be commenced." This reasoning, however, applies, only to "existing" rights; state law determines when rights exist. Section 16 guarantees a "remedy by due course of law" for "an injury done", but state law determines what injuries are recognized and what remedies are available. *See Building Service & Maintenance Union Local No. 47 v. St. Lukes Hospital*, 11 Ohio Misc. 218, 227 N.E.2d 265, 271 (C.P.Cuyahoga Cty.1967).

The Ohio Supreme Court has long held that causes of action may be abolished:

No one has a vested right in rules of the common law. Rights of property vested under the common law cannot be taken away without due process, but the law itself as a rule of conduct may be changed at the will of the legislature unless prevented by constitutional limita-tions. The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to new circumstances.

*Fassig v. State ex rel. Turner*, 95 Ohio St. 232, 248, 116 N.E. 104 (1917). More recently, the Court repeated, "There is no question that the legislative branch of the government, unless prohibited by constitutional limitations, may modify or entirely abolish common-law actions and defenses," *Thompson v. Ford*, 164 Ohio St. 74, 79, 128 N.E.2d 111 (1955).

One Justice of the Ohio Supreme Court, Clifford F. Brown, has challenged this long-standing rule, arguing that under the "open court" provision legislation that withdraws remedies for well-established common-law causes of action should be held constitutional only if other remedies are substituted, or such legislation is a reasonable exercise of the police power on behalf of the public welfare. *See Opalko v. Marymount Hospital, Inc.*, 9 Ohio St.3d 63, 458 N.E.2d 847, 851 (1984) (Brown, J., dissenting); *Schwan v. Riverside Methodist Hospital*, 6 Ohio St.3d 300, 452 N.E.2d 1337, 1340–41 (1983) (Brown, J., concurring). Because a majority of the justices of the Ohio Supreme Court have very recently refused to support the interpretation of the "open court" provision expressed by Justice Brown [12] we conclude that the Ohio courts will probably continue to hold that the state constitution does not prohibit the legislature from abolishing causes of action, so that section 2305.131 does not violate the "open court" provision.

**B.**

■■■ Hartford also contends that section 2305.131 violates the equal protection

---

**12.** A recent majority opinion written by Justice Brown suggested that a concern for fairness requires that a litigant not be deprived of his cause of action before he can be aware that it has accrued:

Justice in this case cries out for a remedy. How can anyone be precluded from asserting a claim by a statute of limitations which expires before the discovery of the injury? How can anyone charged with the responsibility of administering justice allow such an absurdity?

*O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727, 731 (1983). Under this reasoning, the Supreme Court might question section 2305.131, which can extinguish a cause of action before it arises. *O'Stricker* deals with statutory interpretation, however, not constitutional law. Moreover, *O'Stricker* predates the two cases discussed in the text in which the majority of the Court rejected Justice Brown's interpretation of the state constitution.

clause of the fourteenth amendment and Section 2, Article I of the Ohio Constitution, which states, in relevant part, that "no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly." The Ohio Supreme Court has held that the limitations placed upon government acts by these federal and state provisions are "essentially identical," *Beatty v. Akron City Hospital*, 67 Ohio St.2d 483, 491, 424 N.E.2d 586 (1981), *quoting Kinney v. Kaiser Aluminum & Chemical Corp.*, 41 Ohio St.2d 120, 123, 322 N.E.2d 880 (1975), and that courts may look to federal case law to interpret Ohio's constitutional prohibition of "special privileges or immunities," *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 8, 399 N.E.2d 66 (1980).[13]

Therefore, the same standard may be used to judge the constitutionality of section 2305.131 under these federal and state equal protection provisions. According to the United States Supreme Court, to provide equal protection in a case that does not involve grounds for heightened scrutiny, "legislation [must] classify the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981). Similarly, the Ohio Supreme Court has stated, "Although equal protection of the laws does not totally prevent legislative classification, it does require the existence of reasonable grounds for making a distinction between those within and those outside a designated class." *Beatty*, 67 Ohio St.2d at 491, 424 N.E.2d 586; *see State v. Buckley*, 16 Ohio St.2d 128, 134, 243 N.E.2d 66 (1968), *appeal dismissed*, 395 U.S. 163, 89 S.Ct. 1647, 23 L.Ed.2d 174 (1969). We find, under this "rational basis" standard, that

section 2305.131 satisfies equal protection requirements.

Statutes of repose for designers and builders like section 2305.131 affect suits that could be brought against three groups of potential defendants: persons "performing services for or furnishing the design, planning, supervision of construction, or construction" of an improvement to real property; persons who supply products used in construction of the improvement; and persons "in actual possession and control as owner, tenant, or otherwise" of the improvement. Only the first group, the designers and builders, is covered by these statutes. As discussed above, the object of these statutes is protecting designers and builders from stale litigation. A number of courts have held that protecting only a limited group of those who could be sued for damages arising from a defect in an improvement violates equal protection, under the federal or state constitution, or both. *See Shibuya v. Architects Hawaii Limited*, 65 Haw. 26, 647 P.2d 276 (1982); *State Farm Fire and Casualty Co. v. All Electric, Inc.*, Nev., 660 P.2d 995 (1983); *Henderson Clay Products, Inc. v. Edgar Wood & Associates, Inc.*, 122 N.H. 800, 451 A.2d 174 (1982); *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okla.1977); *Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo.1980).

After considering the reasoning of these decisions, and of the more numerous cases that hold to the contrary, we are persuaded that these classifications rest on a rational basis. Materialmen who supply products to builders are admittedly excluded from the statute's protection. The Illinois Supreme Court in *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588, 591 (1967), in

---

**13.** Not all states equate their constitutional provision barring special immunities and privileges with federal equal protection guarantees. For example, in South Dakota, the classification test is more stringently applied under the state constitution than under the fourteenth amendment; its statute of repose for designers and builders was upheld under both constitutions, however. *See McMacken v. State*, 320 N.W.2d 131, 136, *aff'd on rehearing*, 325 N.W.2d 60 (S.D.1982).

Two courts have held their similar statutes unconstitutional under their state constitution's special privileges and immunities clause, without extending their analysis to federal equal protection. *See Shibuya v. Architects Hawaii Ltd.*, 65 Haw. 26, 647 P.2d 276, 288 (1982); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821, 824 (Wyo.1980). Neither decision articulates the distinction between the state provision and federal equal protection.

holding its four-year statute unconstitutional, found this an arbitrary distinction:

> If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted.

In fact, however, materialmen are situated differently from designers and builders and may rationally be treated differently. A materialman typically supplies components in large quantities and can standardize the items he produces. Standardized processes allow the materialman to "maintain high quality control standards in the controlled environment of the factory." *Burmaster,* 366 So.2d at 1386; *see Yarbro,* 655 P.2d at 828; *Cheswold Volunteer Fire Co.,* 462 A.2d at 425; *Klein,* 437 N.S.2d at 524. In contrast, defects are harder to detect in the individualized jobs performed by designers and builders. *Howell v. Burk,* 90 N.M. 688, 568 P.2d 214, 220 (Ct. App.), *cert. denied,* 91 N.M. 3, 569 P.2d 413 (1977).[14] Unlike the materialman, the designer or builder can pretest his work only in a limited fashion. *Burmaster,* 366 So.2d at 1386; *Freezer Storage, Inc.,* 382 A.2d at 719. "Further, every building is unique and far more complex than any of its component parts. Even in the most uniform-looking suburban subdivision, each house stands on a separate plot of land; each lot may have slightly different soil conditions; one may be near an underground stream and so forth." *Freezer Storage, Inc.,* 382 A.2d at 719. These differences in work conditions provide a rational basis for statutes of repose that limit the liability of designers and builders, but not materialmen.

Owners and tenants are also outside the limitation created by statutes like section 2305.131; again, this distinction does not violate equal protection because of valid differences between those who design and build an improvement and those who own or occupy it. Owners and tenants unlike designers and builders exercise continuing control over an improvement. *See Yarbro,* 655 P.2d at 827; *Howell,* 568 P.2d at 220. When an owner accepts the improvement from the builder, he is ordinarily deemed to have accepted some responsibility for the future condition of the premises. *See Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918, 920 (1970), *appeal dismissed,* 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); *Beecher,* 447 N.E.2d at 626; *Reeves,* 551 P.2d at 652. After acceptance, "there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement" by the owner or tenant. *Burmaster,* 366 So.2d at 1385; *see Cheswold Volunteer Fire Co.,* 462 A.2d at 425; *Beecher,* 447 N.E.2d at 626; *Klein,* 437 N.E.2d at 524. Moreover, the designer or builder ordinarily cannot remedy these conditions because, unlike the owner or tenant, he has neither the right nor the opportunity to make ongoing inspections. *Beecher,* 447 N.E.2d at 626; *Burmaster,* 366 So.2d at 1385; *Klein,* 437 N.E.2d at 524.

Aside from these differences in control over the maintenance of an improvement, there are additional grounds for treating designers and builders differently from owners and tenants. "[T]he scope of a builder's liability is often greater than an owner's; he is faced with more potential plaintiffs and more theories of liability." *Beecher,* 447 N.E.2d at 627; *see Freezer Storage, Inc.,* 382 A.2d at 718. On the other hand, the liability of an owner or tenant has a long history and is limited by rules defining his duty to various classes of visitors. *See Yarbro,* 655 P.2d at 827; *Ho-*

---

**14.** The state may wish to "encourage experimentation with new designs and materials." Since innovation may involve some risk, the state may limit liability to promote "design creativity." *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 17–18, 299 N.W.2d 336 (1980); *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514, 524 (1982); *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 302 S.E.2d 868, 878 (1983).

*well,* 568 P.2d at 220; *Freezer Storage, Inc.,* 382 A.2d at 718. These limitations on the liability of owners and tenants, in contrast to the wider liability that can be imposed on designers and builders, together with the control over the improvement by owners and tenants provide a reasonable justification for their exclusion from the protection of section 2305.131.

Thus, the classification created by section 2305.131 between designers and builder on one side and materialmen, and owners and tenants on the other side is rationally related to the state's objective. For a number of reasons, designers and builders are peculiarly vulnerable to extensive liability and problems of proof inherent in stale litigation.[15] The state's decision to protect that one group through a statute of repose rests on reasonable grounds and does not violate equal protection.

We therefore find that section 2305.131 does not violate the Ohio or United States Constitutions. Moreover, we find that the statute bars suits for all types of damages. Accordingly, we affirm the District Court's grants of summary judgment and dismissal.

**15.** The logic of this reasoning has been challenged on the grounds that the difficulties of defending stale litigation brought against designers and builders are "largely theoretical," and that materialmen and owners and tenants would also experience difficulties of proof. *State Farm Fire and Casualty Co. v. All Elec., Inc.,* Nev., 660 P.2d 995, 1000 (1983); *see Shibuya v. Architects Hawaii Ltd.,* 65 Haw. 26, 647 P.2d 276, 287–88 (1982). Courts have also refused to hold these distinctions reasonable because of the unfairness and hardship of barring an injured plaintiff's claim or shifting total liability to a party only partially responsible. *See Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568, 571 (1973); *State Farm Fire and Casualty Co.,* 660 P.2d at 1000; *Henderson Clay Prods., Inc. v. Edgar Wood & Assocs., Inc.,* 122 N.H. 800, 451 A.2d 174, 175 (1982). Equal protection, however, does not require perfection in making classifications; a statute should not be struck down merely because a court finds that it promotes an unwise policy, or that a more just and humane system could be devised. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976); *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). As long as the classifications are rational not arbitrary, the requirements of equal protection are satisfied. *See Yarbro v. Hilton Hotels Corp.,* Colo., 655 P.2d 822, 826 n. 5 (1982); *Beecher v. White,* Ind.App., 447 N.E.2d 622, 627 (1983); *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514, 520 n. 11 (1982); *McMacken v. State,* 320 N.W.2d 131, 136, *aff'd on rehearing,* 325 N.W.2d 60 (S.D.1982).